UNITED STATES of America, Appellee,

v.

Walter J. CEGELKA, Appellant.

No. 87–2410.

United States Court of Appeals,
Eighth Circuit.

Submitted June 17, 1988.

Decided Aug. 10, 1988.

Rehearing and Rehearing En Banc
Denied Sept. 28, 1988.

John D. Schneider, St. Louis, Mo., for appellant.

Timothy J. Wilson, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ARNOLD, Circuit Judge, ROSS, Senior Circuit Judge, and WOLLE*, District Judge.

ROSS, Senior Circuit Judge.

Dr. Walter Cegelka was indicted on nine counts relating to a scheme to submit false Medicare claim forms. The trial court[1] dismissed three counts of mail fraud because of failure of proof of the mailings. The jury acquitted Cegelka on another three counts of mail fraud, and convicted him on three counts of making false representations of material fact on Medicare claim forms in violation of 42 U.S.C. § 1395nn(a)(1)[2]. Cegelka appeals his conviction, alleging that: 1) the trial court erred in failing to give the jury a good faith instruction and an instruction on specific intent to deceive; 2) Cegelka was denied due process because the Medicare newsletters setting forth claim requirements were vague; and 3) there was insufficient evi-

---

* Honorable Charles R. Wolle, United States District Court Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable William L. Hungate, United States District Court Judge for the Eastern District of Missouri.

2. The statute under which Cegelka was convicted, 42 U.S.C. § 1395nn(a), was repealed on August 18, 1987, Medicare and Medicaid Patient and Program Protection Act of 1987, Pub.L. No. 100–93, § 4(e), 101 Stat. 689 (1987). Although Cegelka was convicted on September 4, 1987, after the effective date of repeal, his conviction is unaffected by the repeal because his acts

occurred and the indictment was returned before the repeal of the statute. *See* 1 U.S.C. § 109. ("The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper * * * prosecution for the enforcement of such penalty, forfeiture, or liability."). *See also United States v. Gourley,* 835 F.2d 249, 250 n. 1 (10th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988).

dence for the jury to convict him. For the reasons set forth below, we affirm.

The charges against Cegelka, a psychologist, arose in relation to his submitting claim forms to Medicare for payment for psychological testing which he allegedly did on sixteen residents of the Villa Capri Nursing Home in St. Louis County, Missouri. The Home's administrator, Jane Forness, testified that Cegelka approached her and stated that he wanted to do psychological testing on the Home's residents for a paper he was writing. Forness told Cegelka that he would have to get approval from the residents' physicians before the testing could be performed. She further testified that she never gave Cegelka permission to test any of the residents. There was conflicting testimony as to whether the testing was actually performed.

Pursuant to the requirements of Medicare, a psychologist can bill Medicare for psychological testing only when that patient's physician ordered the testing.[3] However, rather than get the residents' physicians' approval, Cegelka simply took the physicians' names from the residents' medical charts and filled them in on the Medicare forms. Cegelka testified at trial that he thought Forness had obtained the physician approval, although Forness testified that she never attempted to get the physician approval, nor did she indicate to Cegelka that she would do so. The residents' physicians testified that they had never heard of Cegelka and had never ordered the testing. The physicians further testified that many of their patients could not participate in or would not benefit from psychological testing because of their mental or physical conditions.

In addition to improperly filling in the physicians' names on the claim forms, Cegelka also improperly signed the patients' names on the forms. The forms had separate boxes which stated "Patient's or Authorized Person's Signature" and "I authorize payment of medical benefits to under-

signed physician or supplier for service below." On each form, Cegelka either signed the patient's name or put "unable to sign." On some of the forms where he put the patient's signature, Cegelka also put his own initials.

When a criminal investigation of the matter began by investigators from the Department of Health and Human Services, Cegelka denied that he signed the patients' signatures. However, he later admitted doing so, stating that personnel at General American Life Insurance Company, Medicare's administrator in Missouri, told him to fill out the forms in that manner. General American personnel denied telling Cegelka that he could fill out the forms as he did.

Cegelka's position at trial was that, in signing the patients' names on the Medicare claim forms, he thought he was filling out the forms in the proper manner in accordance with the confusing instructions he received from General American personnel. With regard to his putting the physicians' names on the claim forms, Cegelka's defense was that he reasonably believed that the staff at the nursing home had secured the physician referrals for him. Cegelka requested the following good faith instruction:

> Since an essential element of the crimes charged is * * * an intent to deceive * * *, it follows that good faith on the part of the defendant is a complete defense to the charges. A defendant, however, has no burden to establish a defense of good faith. The burden is on the Government to prove fraudulent intent and deceptive purpose * * * beyond a reasonable doubt.

■ Cegelka's first argument on appeal is that the trial court erred in refusing to give his good faith instruction and in failing to instruct the jury that specific intent to deceive was an element of the offense

---

**3.** The instructions for filling out the Medicare claim forms provided in part:

>   5. On the claim form state the complete name and address of the physician who ordered the psychological testing.

>   6. State the physician's diagnosis of the patient which would establish medical necessity for psychological testing.

charged. A defendant is entitled to his theory of the defense if it is timely requested, supported by the evidence and states the law correctly. *United States v. Jerde*, 841 F.2d 818, 823 (8th Cir.1988). 42 U.S.C. § 1395nn(a)(1) prohibits a person from "knowingly and willfully mak[ing] or caus[ing] to be made any false statement or representation of a material fact in any application" for Medicare payments. By the clear language of § 1395nn(a)(1), specific intent to deceive or defraud is not an element of the offense. A review of the instructions given the jury indicates that the trial court correctly instructed the jury as to the elements of making a false claim for Medicare payments. Further, the court properly instructed the jury as to the definitions of the terms "knowingly" and "willfully." The court also instructed the jury that it had to find that Cegelka had the requisite specific intent, in that he "knowingly did an act which the law forbids, purposely intending to violate the law." Therefore, we find that the trial court did not err in refusing to give Cegelka's proffered instructions.

Cegelka next argues that his conviction violates due process because the Medicare newsletters and claim forms did not clearly state that he personally had to receive the physician's referral. Cegelka's primary defense at trial was that he rightfully believed the personnel at the nursing home had obtained the physicians' referrals because the nursing home had allowed him to do the testing. Therefore, he contends that he was convicted not for knowingly making a false statement, but for not personally receiving the physicians' referrals, which he argues is not clearly proscribed by law.

Cegelka's argument is without merit. A review of the record indicates that the jury could not have convicted him for simply failing to obtain the referrals personally, despite his belief that the nursing home had obtained the referrals for him. The indictment specifically charged that Cegelka indicated on the claim forms that he had a physician's referral despite knowing that there was no such referral. The jury was informed as to the allegations in the indict-ment. Further, the jury was instructed that an element of the crimes charged was that Cegelka knew the statements on the claims forms were false. Therefore, contrary to Cegelka's contention, the jury did not convict him simply for failing to obtain the physicians' referrals, but instead convicted him for knowingly falsely stating in the Medicare claim forms that he had such referrals. Such conduct is clearly proscribed by 42 U.S.C. § 1395nn.

■ Finally, Cegelka argues that there was insufficient evidence to support his conviction. Cegelka contends that the evidence showed that he reasonably believed the personnel at the Home had obtained the physicians' referrals, and that therefore his representations in the claim forms were not false.

In considering a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the government, giving to the government the benefit of all reasonable inferences that logically may be drawn from the evidence. *Rothgeb v. United States*, 789 F.2d 647, 648 (8th Cir.1986). We will not overturn the verdict unless the evidence is such that reasonable minded jurors must have a reasonable doubt as to the existence of any of the essential elements of the crime. *Id.* The credibility of the witnesses is to be determined by the jury. *United States v. Scott*, 668 F.2d 384, 388 (8th Cir.1981).

Considering the evidence in the light most favorable to the government, we find that there was sufficient evidence for the jury to find that Cegelka knew that there were no physician referrals when he filled out the Medicare claim forms. Forness, the nursing home administrator, testified that she neither told Cegelka nor did she lead him to believe that she would get the physicians' referrals for the testing. All the physicians in question stated that they knew nothing of the testing, nor did they ever receive any test results. There were no notations made in the residents' medical files or records to indicate to Cegelka that the physicians had approved the testing. We conclude that there was more than

sufficient evidence to support the jury's verdict.

For the foregoing reasons, the conviction of Walter Cegelka is affirmed.