**UNITED STATES of America, Appellee,**

v.

**David BIG CROW, Appellant.**

**UNITED STATES of America, Appellant,**

v.

**David BIG CROW, Appellee.**

**Nos. 89–5275, 89–5314.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1989.

Decided March 7, 1990.

Charles J. Mickel, Rapid City, S.D., for appellant.

Ted L. McBride, Sioux Falls, S.D., for appellee.

* The Honorable James B. McMillan, U.S. District Judge for the Western District of North Car-

Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge and MCMILLAN,* U.S. District Judge.

HEANEY, Senior Circuit Judge.

This case is before us on cross appeals by the defendant and the Government. David Big Crow appeals his conviction for assault with a dangerous weapon under 18 U.S.C. sections 1153 and 113(c), and assault resulting in serious bodily injury under 18 U.S.C. sections 1153 and 113(f). The Government appeals the sentence imposed by the district court following Big Crow's conviction. We affirm.

## BACKGROUND

In the early morning of October 9, 1988, following an evening of heavy drinking, Big Crow and his wife, Margaret, returned from a dance to their trailer home near Porcupine, South Dakota, on the Pine Ridge Indian Reservation. They were met there by Cheryl Ferguson, Donald Twiss, and James Twiss, friends of the Big Crows who had attended the same dance and who also had been drinking. On entering the Big Crow residence, James Twiss went to sleep on a couch. The others, accompanied by Tanya Kills Warrior, who had attended the dance with the Big Crows, and Cathy Iron Cloud, who had been babysitting the Big Crow children, began to play a drinking game called quarter pitch. A half hour later, Donald Twiss left the game and went to sleep on the floor next to the couch his brother occupied.

Testimony from the various participants about ensuing events differs considerably. Some time later, Big Crow also got up and left the kitchen, where the game took place. When he returned, Margaret Big Crow was making a telephone call. Big Crow tackled her and the two fell into the living room. Margaret Big Crow testified that they fell on Donald Twiss, who had been asleep on the floor, and that Twiss then moved across the room. Donald Twiss testified that he awoke feeling a

olina, sitting by designation.

sharp pain above his eye and bleeding from his forehead. Twiss also stated that Big Crow was standing next to him with a piece of firewood in his hand, making derogatory remarks about the Twiss family. Both Donald and James Twiss testified that James Twiss then got up from the couch. Big Crow challenged James Twiss with the piece of firewood. Donald Twiss testified that James Twiss then knocked Big Crow to the floor. James Twiss testified that Big Crow hit him in the ribs with the firewood, after which he hit Big Crow, who then ran outside.

Cheryl Ferguson testified that upon entering the living room from the bathroom, she observed Big Crow holding a piece of firewood and Donald Twiss rolling over on the floor with blood on his face. She could not tell whether or not Big Crow had struck Donald Twiss. She stated that Big Crow and James Twiss started fighting and that Big Crow subsequently went outside.

Cathy Iron Cloud testified that she saw Big Crow pick James Twiss up off the couch and that the two men started fighting. They stepped on Donald Twiss, who moved toward the fireplace. Iron Cloud testified that Donald Twiss was not bleeding at this point. She stated that James Twiss pinned Big Crow to the wall with his forearm, and that Big Crow reached into the wood box and picked up a log. Iron Cloud stated that after hitting James Twiss with the log, Big Crow threw it toward the fireplace, where it struck Donald Twiss. She testified that she could not tell whether or not Big Crow intended the log to hit Donald Twiss.

Iron Cloud and James Twiss then took Donald Twiss into the bathroom to try to stop the bleeding from his head. Five minutes later they heard yelling in the kitchen and emerged from the bathroom to see Big Crow holding a folding chair and Margaret Big Crow falling to the floor, unconscious. Donald Twiss testified that he saw Big Crow hit Margaret Big Crow with the chair. Neither James Twiss nor Iron Cloud actually witnessed Margaret Big Crow being struck.

Big Crow then left the trailer. Donald Twiss called the police and requested an ambulance for Margaret Big Crow. Approximately thirty minutes later, police arrived and Donald Twiss and Margaret Big Crow were taken to a hospital in Pine Ridge. Twiss had a severe forehead laceration with an underlying bone fracture. Margaret Big Crow remained unconscious until noon on October 9.

Big Crow was standing outside the trailer with Tanya Kills Warrior when the police approached. She testified that Big Crow ran off when he saw the police. When the police officers were unable to find Big Crow, two of them drove away, leaving two more inside the trailer. Shortly thereafter, Big Crow returned to the trailer, where he was arrested and handcuffed. Officer Cameron Young Bear testified that Big Crow struggled slightly while being handcuffed, but made no attempt to escape and told Young Bear that he gave himself up. Young Bear also testified that he took as evidence the piece of firewood with which Big Crow allegedly struck Donald Twiss. Laboratory testing revealed specks of human blood on the wood, but they were not sufficient in quantity to be grouped for blood type.

Big Crow was charged with assault with a dangerous weapon and assault resulting in serious bodily injury for the attack on Donald Twiss. He pleaded not guilty and a jury convicted him of both counts. Because the offense occurred after November 1, 1987, the United States Sentencing Guidelines apply.

Under the Guidelines, aggravated assault has a base offense level of 15. U.S.S.G. § 2A2.2(a). Use of a dangerous weapon and the infliction of serious bodily injury increase the offense level by 8 levels for a total of 23. Id. §§ 2A2.2(b)(2)(B), 2A2.2(b)(3)(B). Big Crow had no criminal record, giving him a criminal history category of I. The United States Probation Officer's presentence investigation report recommended that Big Crow receive two points for acceptance of responsibility, and suggested that a departure from the Guideline range might be warranted because Big

Crow's offense was out of character and he had been a decent citizen living in a difficult environment. An offense level of 23 has a Guideline range of 46–54 months, while an offense level of 21 has a range of 37–46 months.

The district court gave Big Crow a two-point reduction for acceptance of responsibility over the Government's objection.[1] The court also departed downward from the Guideline range, sentencing Big Crow to 24 months imprisonment and two years of supervised release to include treatment for alcohol abuse. The court's reasons for the departure were Big Crow's intoxication at the time of the offense, his lack of a prior criminal record, his excellent employment history, and his consistent efforts to overcome the adverse living conditions on the Pine Ridge reservation. The court also noted that it had received and considered letters written on Big Crow's behalf by community leaders and a Bureau of Indian Affairs official.

## DISCUSSION

Big Crow contends on appeal that the evidence was insufficient for the jury to find that he intentionally assaulted and injured Donald Twiss. The Government claims that the district court erred in granting Big Crow two points for acceptance of responsibility and in departing downward from the Guideline range in sentencing Big Crow. We address these arguments in turn.

### I. Sufficiency of the Evidence

█ In reviewing a jury conviction, we must consider the evidence in the light most favorable to the Government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We must uphold the verdict if substantial evidence in the record supports it. *See United States v. Elk*, 658 F.2d 644, 646 (8th Cir.1981); *United States v. Schmidt*, 626 F.2d 616, 617 (8th Cir.1980).

Big Crow contends that because Cathy Iron Cloud was the only witness who had not been drinking heavily, her testimony is entitled to great weight. Iron Cloud testified that she saw no blood on Donald Twiss's face until after the piece of firewood Big Crow threw struck Twiss. Big Crow claims that this testimony supports the inference that Twiss's injury was accidental rather than intentional.

Witness credibility is a question of fact for the jury. *See United States v. Cegelka*, 853 F.2d 627, 629 (8th Cir.1988). Additionally, the question of intent often turns on the credibility of witnesses "and is peculiarly the province of the fact finder." *United States v. Reeves*, 730 F.2d 1189, 1195 (8th Cir.1984) (quoting *United States v. Singer*, 660 F.2d 1295, 1302 (8th Cir. 1981), *cert. denied*, 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982)). Moreover, intent may be proved by circumstantial evidence. *See United States v. Elk*, 658 F.2d 644, 646 (8th Cir.1981).

After carefully reviewing all the testimony, we find sufficient evidence from which the jury could conclude beyond a reasonable doubt that Big Crow intentionally assaulted Donald Twiss with a piece of firewood. Cheryl Ferguson and James Twiss testified that they saw Big Crow holding a piece of firewood while standing next to Donald Twiss, who was on the floor holding his head and moaning. Cheryl Ferguson and Donald Twiss testified that Twiss's head was bleeding at this point. Several witnesses heard Big Crow express animosity toward the Twiss family and saw him challenge James Twiss with the firewood. Even Cathy Iron Cloud, who stated that Donald Twiss was not bleeding until after he was struck by the log Big Crow threw, could not tell whether Big Crow had intended to hit Twiss. Viewing the evidence in the light most favorable to the Government, we believe that sufficient evidence supports the jury's verdict.

---

1. The government contended that Big Crow had not voluntarily admitted his involvement in the offense, had not surrendered promptly, and had not manifested his acceptance of responsibility in a timely manner.

## II. Application of the Sentencing Guidelines

The Government claims that the district court misapplied the Sentencing Guidelines in granting Big Crow a two-point reduction for acceptance of responsibility and in departing below the Guideline range in sentencing Big Crow.

### A. Acceptance of Responsibility

Sentencing Guideline section 3E1.1(a) provides: "If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels." U.S.S.G. § 3E1.1(a). The two-level reduction for acceptance of responsibility may be given regardless of whether the defendant's conviction arises from a guilty plea or a jury's finding of guilt. U.S.S.G. § 3E1.1(b). The commentary to section 3E1.1 notes:

> The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation.

U.S.S.G. § 3E1.1 commentary, application note 5; *see also United States v. Nunley,* 873 F.2d 182, 187 (8th Cir.1989) (quoting application note 5).

Over the Government's objection, the district court granted Big Crow two points for acceptance of responsibility. The court based its decision, in part, on the recommendation contained in the probation officer's carefully researched presentence investigation report. The court also had the benefit of personal observation of the defendant's conduct during the trial.

■■ While Big Crow could not remember the incident of October 9, 1988, he readily admitted that his behavior caused the assault and Donald Twiss's injuries. Although he expressed doubt that he had intentionally assaulted and injured Twiss, he acknowledged that his excessive drinking caused him to lose control of his behavior, that his behavior was wrong, and that he was responsible for the consequences. Big Crow expressed strong remorse for injuring Donald Twiss and a sincere desire to refrain from the use of alcohol in the future. Consequently, we believe an adequate foundation supports the district court's determination that Big Crow had accepted responsibility for his offense.

### B. Downward Departure from the Guidelines

The district court sentenced Big Crow to 24 months imprisonment and two years supervised release. The guideline range for Big Crow's offense, including the two-level reduction for acceptance of responsibility, is 37–46 months. A sentencing court must impose a sentence within the Guideline range "unless the court finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (1988).

Our procedure for review of a sentence outside the Guideline range is set forth at 18 U.S.C. § 3742(e)(3).[2] We are to consider

---

**2.** **(e) Consideration.**—Upon review of the record, the court of appeals shall determine whether the sentence—

. . . .

(3) is outside the applicable guideline range, and is unreasonable, having regard for—

(A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and

(B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c)[.]

. . . .

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

18 U.S.C. § 3742(e)(3) (1988).

The factors to be considered in imposing a sentence are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

the factors established under the Guidelines for imposing sentences and the reasons the district court gave for imposing the sentence in question to determine whether the departure from the Guideline range is unreasonable.

The district court's stated reasons for departing from the Guidelines were as follows:

> This is not a case that is different from any of those cases that the court sees involving perhaps more in the Indian country than non-Indian country, but in any event, offenses which are committed in conditions of extreme intoxication or at least some extent of intoxication..... In this particular case, you never had a criminal record.... You have been a hard worker in your job, and not too pleasant of a job. You at least tried in your young life to overcome many of the difficult conditions, which the court knows exists [sic] in Indian country.... By reason of the fact that this was a one-time matter, by reason of the fact that you have been trying to lead a good and decent life, I am going to deviate further from the guidelines.... I think this is a legitimate argument that your conduct was not entirely intentional.

Transcript of Sentencing Hearing at 201–03.

■ Our task is to determine whether the mitigating circumstances the district court relied on are of a kind or degree appropriate to justify departure, whether these circumstances actually exist in this case, and whether the degree of departure is reasonable. *See United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.1989).

■ Big Crow concedes that two of the district court's stated reasons for departure, his intoxication at the time of the offense and his lack of a prior criminal record, are not appropriate reasons for deviating from the Guideline range. The specific offender characteristic of alcohol abuse "is not a reason for imposing a sentence below the guidelines." U.S.S.G. § 5H1.4 (policy statement). Similarly, although a defendant's prior criminal record has relevance in determining his sentence, U.S.S.G. § 5H1.8 (policy statement), we believe that the Sentencing Commission adequately accounted for criminal history in formulating the Sentencing Table.

The district court's additional reasons for sentencing Big Crow to a term of imprisonment less than the Guideline range, however, are appropriate and are supported by the record. Specifically, the district court noted Big Crow's excellent employment record and his consistent efforts to overcome the adverse environment of the Pine Ridge reservation. Guideline policy statements indicate that previous employment record and family ties and responsibilities and community ties are "not *ordinarily* relevant in determining whether a sentence should be outside the guidelines." U.S.S.G. §§ 5H1.5, 5H1.6 (policy statements) (emphasis added). We believe that Big Crow's case presents mitigating circumstances in these areas of a magnitude "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *See* 18 U.S.C. § 3553(b) (1988).

The unemployment rate on the Pine Ridge Indian Reservation is 72 percent. Per capita annual income on the reserva-

---

(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for the applicable category of defendant as set forth in the guidelines ...;
(5) any pertinent policy statement issued by the Sentencing Commission ...;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.
18 U.S.C. § 3553(a) (1988).

tion is estimated at $1,042.[3] Bureau of Indian Affairs, *Comprehensive Solid Waste Management Program for the Pine Ridge Indian Reservation, South Dakota* 2 (June 1989). Big Crow, who was twenty-three at the time of his offense, has worked steadily since the age of seventeen. With his wife's help, he provides more than adequately for the needs of their family, which includes two children. Since 1985, Big Crow has worked as a forestry aid and firefighter for the Bureau of Indian Affairs. His employer indicated that Big Crow is a valued employee with an excellent record and expressed willingness to hold Big Crow's job for him until he is released from custody.

Five members of Big Crow's community sent unsolicited letters on his behalf to the sentencing court. The writers included a local school principal, the president of the Oglala Sioux Tribe, and the agency safety officer of the Bureau of Indian Affairs. The presentence investigation report also noted that Big Crow has a positive reputation in his community and is well-liked by his employers and area law enforcement personnel.

We believe that the district court acted within its discretion in sentencing Big Crow below the Guideline range, and that Big Crow's excellent employment history, solid community ties, and consistent efforts to lead a decent life in a difficult environment are sufficiently unusual to constitute grounds for a departure from the Guidelines in this case. We also find that the sentence the district court imposed[4] is reasonable and adequate to serve the ends which sentencing under the Guidelines should promote. *See* 18 U.S.C. § 3553(a) (1988).

## CONCLUSION

Sufficient evidence in the record supports Big Crow's conviction of assault with a dangerous weapon and assault resulting in serious bodily injury. The district court did not err in granting Big Crow a two-level reduction for acceptance of responsibility and acted within its discretion in imposing a sentence below the Guideline range. Accordingly, we affirm the decision of the district court.

WOLLMAN, Judge, concurring in part; dissenting in part.

With the exception of its holding that the district court did not err in imposing a sentence below the Guidelines range, I concur fully in the majority opinion.

Although as an abstract matter I have no disagreement with the sentence imposed by the district court, I do not believe that the Guidelines authorize the downward departure. Guidelines § 5H1.10 unequivocally prohibits courts from conferring any relevance to race, national origin, and socio-economic status when sentencing. Nevertheless, the majority opinion finds Big Crow's residence on the Pine Ridge Indian Reservation, as well as the Reservation's unemployment rate and per capita income, to be appropriate mitigating circumstances for departure. The opinion explains this away in a footnote by pointing to a Senate Judiciary Committee report that says that the section 5H1.10 requirement of neutrality is not a requirement of blindness. The little that this statement tells us, however, is also irrelevant to our review of Guidelines application because 18 U.S.C. § 3553(b) excludes consideration of legislative history. That statute permits courts to consider only the sentencing guidelines, policy statements, and official commentary in determining whether the Sentencing Commis-

---

**3.** A policy statement in the Guidelines states that race, national origin, and socioeconomic status are not relevant in the determination of a sentence. U.S.S.G. § 5H1.10 (policy statement). Commentators note, however, that the "legislative history suggests that the use of the phrase 'are not relevant' may be too sweeping because the Senate Judiciary Committee's report states that 'the requirement of neutrality ... is not a requirement of blindness.'" T. Hutchison & D.

Yellen, *Federal Sentencing Law and Practice* § 5H1.10, at 376 annot. 2 (1989) (quoting S.Rep. No. 225, 98th Cong., 1st Sess. 171 n. 409 (1983)).

**4.** The district court sentenced Big Crow to 24 months imprisonment and two years of supervised release to include treatment for substance abuse and testing to insure that Big Crow does not return to the use of alcohol or drugs.

sion adequately took a circumstance into consideration. Section 5H1.10 shows that the Sentencing Commission considered race, national origin and socio-economic status, but then chose to foreclose these factors as a basis for sentencing.

Likewise, as recognized in the majority opinion, sections 5H1.5 and 5H1.6 provide that employment record, family ties and responsibilities, and community ties are not ordinarily relevant in determining whether a sentence should be outside the Guidelines. Granted that Big Crow has apparently established an excellent reputation for maintaining steady employment, maintaining close community ties, and meeting his family obligations, what is there that distinguishes his situation from that of other defendants who can make the same showing? To ask this question is not to depreciate that what Big Crow has accomplished. Under the pre–Guidelines regime, the sentence imposed would not be subject to attack. As a practical matter, one wonders why the government attacks it here. There are some things that are better left alone, and Big Crow's sentence is one of them.

Congress made a policy decision—perhaps ill considered, perhaps not—when it created the Sentencing Commission and adopted as one of the goals of guidelines sentencing the elimination of what it perceived to be unwarranted disparity in sentencing. We should not approve departures that, however appealing they may be in their result, subvert both that goal and the spirit of the Guidelines.