UNITED STATES of America, Appellee,

v.

Robert JOHNSON, Appellant.

UNITED STATES of America, Appellee,

v.

Miguel RAMIREZ, a/k/a Lucas Gonzales, Appellant.

UNITED STATES of America, Appellant,

v.

Robert JOHNSON, Appellee.

Nos. 89–1616, 89–1697 and 89–1707.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1989.

Decided July 3, 1990.

Rehearing Denied Aug. 8, 1990.

Sharon Kramer, Chicago, Ill., for appellant Johnson and Michael D. Abzug, Los Angeles, Cal., for appellant Ramirez.

Robert L. Teig, Cedar Rapids, Iowa, for appellee.

Before WOLLMAN, Circuit Judge, and HEANEY, Senior Circuit Judge, and WEBB,* District Judge.

WOLLMAN, Circuit Judge.

Robert Johnson and Miguel Ramirez appeal their convictions and sentences for drug related offenses. The government cross-appeals Johnson's sentence. We affirm.

## I. BACKGROUND

Ramirez met Fernando Casas–Torres in Colombia, South America, in 1986. Ramirez invited Casas–Torres to make money selling cocaine. He offered to supply Casas–Torres with any amount of drugs he wanted. The two soon began an operation in which Ramirez supplied cocaine to Casas–Torres, who distributed the cocaine to Johnson and others. Casas–Torres testified that in the course of his drug dealings he received approximately twenty-four kilo-

grams of cocaine through Ramirez and that he supplied Johnson with between eight and twelve kilograms of cocaine.

In October 1987, Casas–Torres and Johnson rented an apartment in Chicago for their drug operations. Johnson made a one-year advance rent payment. In December 1987, Casas–Torres arranged to supply approximately one kilogram of cocaine to David Stumma, a student at the University of Iowa who distributed drugs. Stumma had previously obtained cocaine from Johnson until his demands exceeded that which Johnson could supply. Johnson introduced Stumma to Casas–Torres, and the two engaged in drug transactions from February to November 1987. Unknown to Casas–Torres, however, by December 1987 government authorities had arrested Stumma but had agreed not to prosecute him if he cooperated. Stumma arranged to meet Casas–Torres in Dubuque, Iowa, on December 3, 1987, to receive the cocaine delivery. Casas–Torres had possession of three kilograms of cocaine at the time, two kilograms of which he placed in the apartment he rented with Johnson (although he testified that Johnson was unaware of this) and the remaining kilogram he took to Dubuque. Government agents arrested Casas–Torres after he showed Stumma the cocaine in the trunk of the car. Stumma testified that he had had no contact with Johnson for six months prior to the December 3 meeting with Casas–Torres and that nothing indicated that Johnson was involved with the delivery. Casas–Torres testified that Johnson did not know he was going to Iowa and knew nothing about the transaction planned with Stumma.

While in custody, Casas–Torres agreed to cooperate with the government. He made several phone calls to Ramirez in California, arranging for Ramirez to deliver two kilograms of cocaine to Drug Enforcement Agency Agent Jeff McCaskill, who Ramirez thought was Stumma. McCaskill met Ramirez on December 10, 1987, at a hotel in Long Beach, California. Ramirez

* The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota, sitting by designation.

planned to leave with McCaskill's car and return with two kilograms of cocaine stored forty-five minutes to an hour away. Government agents arrested Ramirez when he and McCaskill reached the car. They also arrested Jorge Aldemar Paz–Uribe, who had accompanied Ramirez to the meeting.

Paz–Uribe subsequently gave authorities information on an apartment he and Ramirez used for drug business purposes and provided them with a key. In the apartment, agents found two kilograms of cocaine, $250,000 in cash, and money order receipts in the thousands of dollars, many in the name of an alias the government knew Ramirez used. Government agents never saw Ramirez at the apartment, nor did he have keys for the apartment at the time of his arrest. The apartment was not leased in Ramirez' name.

Ramirez, Casas–Torres, and Johnson were charged in a three-count indictment. The first count charged all three defendants with conspiracy to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) (II). The second count charged all three with possession with intent to distribute one kilo of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)(II), and 18 U.S.C. § 2. The third count charged Ramirez with the use of a telephone to facilitate a drug offense, in violation of 21 U.S.C. §§ 843(b) and 843(c). Casas–Torres pleaded guilty to count two of the indictment in exchange for dismissal of count one. He then testified for the prosecution at Ramirez' and Johnson's joint trial.

The jury convicted Johnson and Ramirez on both counts charged against them. The district court sentenced Johnson to 172 months' imprisonment and Ramirez to 450 months' imprisonment.

## II. DISCUSSION

### A. Juror Issue

■ Ramirez and Johnson jointly appeal the district court's [1] refusal to dismiss for cause a juror who asserted during voir dire that he was "doubtful" that he would want someone in his frame of mind on the jury if he were a defendant charged with drug offenses. Juror Schweitzer said that he would have difficulty putting out of his mind articles about drugs he had recently read in news magazines. Upon further questioning by the court and the prosecution, though not by the defense, Schweitzer agreed to try to put what he had read out of his mind and to limit his decision on the case to the evidence he heard in the courtroom and his own common sense.

We will not interfere with a district court's broad discretion to strike jurors for cause absent a showing of actual prejudice. *United States v. Huddleston*, 810 F.2d 751, 753 (8th Cir.1987) (per curiam). The test of a juror's qualifications is "whether a prospective juror 'can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" *Mastrian v. McManus*, 554 F.2d 813, 818 (8th Cir.), *cert. denied*, 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977) (quoting *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975), and *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961)).

There is some question whether this issue is properly before us. Although Johnson's counsel objected to Juror Schweitzer for cause, neither Johnson's nor Ramirez' counsel used a preemptory challenge to strike Schweitzer from the jury, notwithstanding the fact that they used preemptory challenges to strike other jurors whom they had not challenged for cause. Nor did counsel question Schweitzer further during voir dire about his possible prejudice. If defendants were really concerned about the prejudicial effect Schweitzer's presence might have on the jury verdict, they could have removed him from the jury by utilizing a preemptory challenge. Had they done so and had trial resulted in verdicts adverse to them, defendants could have

---

1. The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa.

appealed the loss of an allotted preemptory challenge. *Cf. Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). By declining to exercise an available preemptory challenge, defendants may have been seeking only to preserve an issue for appeal.

In any event, we need not decide the appealability of the issue. We considered a factually similar issue in *United States v. Jones,* 865 F.2d 188 (8th Cir.1989). There, a juror stated "that she would try to base her decision on the evidence, but honestly did not know if her [concern about drug use and possession] would influence the way in which she viewed the evidence." *Id.* at 190. We found that the district court had not abused its discretion by refusing to strike the juror for cause. Juror Schweitzer gave greater assurance than the juror in *Jones;* Schweitzer told both the trial judge and the prosecutor that he thought he could decide the case only on the evidence and his own common sense. Accordingly, we conclude that the district court did not abuse its discretion in refusing to strike Schweitzer for cause.

**B. Sufficiency of the Evidence**

■ Johnson challenges the sufficiency of the evidence to support his conviction on count two of the indictment—possession with intent to distribute one kilogram of cocaine. This count arose from the cocaine Casas–Torres delivered to Stumma in Dubuque, Iowa, on December 3, 1987. The district court instructed the jury that if it found a defendant guilty of the conspiracy, it could find the defendant guilty of the substantive offense charged in count two if it was convinced that the substantive offense was committed in the scope of the conspiracy and the defendant was a member of the conspiracy at that time.

The court's instruction is consistent with the Supreme Court's ruling in *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), which held that when sufficient evidence exists to establish a conspiracy and the defendant's membership in the conspiracy, the defendant may be found guilty of a substantive crime committed by co-conspirators in furtherance of the conspiracy, even though the defendant did not participate in the substantive crime. *Id.* at 647, 66 S.Ct. at 1184; *see also United States v. Williams,* 902 F.2d 675, 678 (8th Cir.1990); *United States v. Casperson,* 773 F.2d 216, 224 (8th Cir.1985). This rule of co-conspirator liability does not apply, however, if the co-conspirator did not commit the crime in furtherance of or within the scope of the conspiracy, or if the crime was merely a ramification of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement. *Pinkerton,* 328 U.S. at 647–48, 66 S.Ct. at 1184. Thus, we must consider whether the evidence was sufficient for a reasonable jury to have concluded beyond a reasonable doubt that Casas–Torres' delivery of the cocaine to Stumma was in furtherance of the drug conspiracy or was a reasonably foreseeable consequence of the conspiracy. *United States v. Golter,* 880 F.2d 91, 94 (8th Cir.1989). In making this assessment, we view the evidence in the light most favorable to the government, giving it the benefit of all inferences that reasonably may be drawn from the evidence. *Id.*

This standard of review compels our affirmance of Johnson's conviction under count two of the indictment. Whether or not Johnson knew about the particular cocaine that Casas–Torres delivered to Stumma or that Casas–Torres stored it in the apartment, the jury had sufficient evidence with which to infer that Johnson introduced Stumma to Casas–Torres for the purpose of facilitating drug transactions between them, and that Johnson rented the apartment with Casas–Torres as a place to stash the drugs they bought and sold. Thus, the jury could have reasonably concluded that Casas–Torres' cocaine delivery to Stumma was a foreseeable consequence of the conspiracy.

**C. Suppression of Evidence from California Apartment**

■ Ramirez challenges the district court's refusal to suppress evidence found in the California apartment. The district

court denied Ramirez' pretrial motion to suppress the evidence. Normally the denial of a pretrial motion to suppress evidence preserves the objection for appeal and defense counsel need not renew the objection at trial. Here, however, Ramirez' counsel stated "no objection" when the evidence was offered at trial. Accordingly, we could find that Ramirez waived his previous objection. *United States v. Wedelstedt,* 589 F.2d 339, 345 (8th Cir.1978), *cert. denied,* 442 U.S. 916, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

Whether or not Ramirez waived his right to appeal the admission of the evidence, his objections to the validity of the search are without merit. During his trial testimony Ramirez disclaimed any interest in the California apartment, thus negating any claim of legitimate expectation of privacy that is a prerequisite to a challenge to a search and seizure. *See Rawlings v. Kentucky,* 448 U.S. 98, 104–06, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980). Passing that shortcoming in his challenge to the search and assuming that Ramirez had a legitimate privacy interest in the apartment, government officials nevertheless obtained the valid consent of a third party who possessed a common authority over the premises, as evidenced by Paz–Uribe's mutual use and joint access to the apartment. *United States v. Bradley,* 869 F.2d 417, 419 (8th Cir.1989). The government permissibly carried its burden of establishing the third party's consent with hearsay testimony. *United States v. Boyce,* 797 F.2d 691, 693 (8th Cir.1986). Although Ramirez claims that the evidence should have been suppressed because the government failed to maintain Paz–Uribe's availability as a witness, he cites no authority to support this proposition. Neither has Ramirez shown that the government's failure to maintain a current address for Paz–Uribe constituted a failure to preserve evidence that resulted in a violation of Ramirez' constitutional rights. *United States v. Johnson,* 767 F.2d 1259, 1272 (8th Cir.1985) (listing elements for considering whether the government's failure to preserve evidence is a constitutional violation). Accordingly, the district court did not err in admitting the evidence.

**D. Sentences**

Johnson and Ramirez challenge the district court's calculation of their base offense levels under the United States Sentencing Guidelines (Guidelines), as well as the district court's upward adjustment of their offense levels for their roles in the drug enterprise. We review the district court's application of the Guidelines according to 18 U.S.C. § 3742(e), accepting the district court's findings of fact unless clearly erroneous and giving due deference to the district court's application of the Guidelines to the facts.

*1. Base Offense Levels*

Johnson and Ramirez challenge the amount of cocaine taken into account by the district court in determining their base offense levels. They claim they should be sentenced only on the basis of the drug amounts alleged in the indictment, which were five or more kilograms for the conspiracy to distribute count, and one kilogram for the possession with intent to distribute count. Rejecting this position, the district court, based on Casas–Torres' testimony at trial, determined that Johnson's involvement in the drug distribution conspiracy extended to nineteen kilograms of cocaine. The court sentenced Ramirez on the basis of fifty-five kilograms, which included cocaine delivered to Casas–Torres, found with people working for Ramirez, found in the California apartment, and represented by cash and money order receipts. Ramirez underscores that none of these drug amounts were found directly in his possession.

Under Guidelines § 1B1.3, as it read at the time of Johnson's and Ramirez' sentencing,[2] the court is to determine a defendant's base offense level on the basis of "relevant conduct," which includes:

all acts and omissions committed or aided and abetted by the defendant, or by a person for whose conduct the defendant

---

**2.** Section 1B1.3 was amended effective November 1, 1989.

is legally responsible, that (1) are part of the same course of conduct, or a common scheme or plan, as the offense of conviction, or (2) are relevant to the defendant's state of mind or motive in omitting the offense of conviction, or (3) indicate the defendant's degree of dependence upon criminal activity for a livelihood.

We have held that district courts applying the Guidelines may look beyond the allegations in the indictment. *United States v. Mann,* 877 F.2d 688, 690 (8th Cir.1989); *United States v. Jones,* 875 F.2d 674, 674–76 (8th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). We find that the district court properly took into account quantities of cocaine not wholly accounted for in the indictment but which reliable evidence connected to Johnson and Ramirez.

### 2. Adjustments to Base Offense Levels

 The district court adjusted Johnson's offense level upward by three points for his role as a manager or supervisor in the drug distribution ring under Guidelines § 3B1.1(b) and then granted a two-level decrease for Johnson's acceptance of responsibility under Guidelines § 3E1.1. Johnson now contests the three-level increase, and the government challenges the downward adjustment.

Johnson agreed to the three-point increase in the district court, but now contends that he was "coerced" into accepting the three-level increase because his counsel agreed to accept it without his knowledge. When Johnson voiced dissatisfaction with the increase, the court warned him that he risked losing the acceptance of responsibility decrease. Johnson now characterizes the district court's warning as a threat that forced him to accept the manager role increase.

The government asserts there was insufficient evidence of Johnson's acceptance of responsibility to warrant a downward adjustment. The government also contends the district court misallocated the burden of proof, placing it on the government, which was moving to oppose the reduction, instead of on Johnson as the defendant

seeking the adjustment. The government cites Fourth Circuit cases which have placed the burden of proof on the defendant. *United States v. Urrego–Linares,* 879 F.2d 1234, 1238–39 (4th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989); *United States v. Harris,* 882 F.2d 902, 906–07 (4th Cir.1989).

We defer to the district court's decision on both of these issues. We grant the sentencing court great deference when reviewing its evaluation of a defendant's acceptance of responsibility, and we will disturb the district court's decision only if it is without foundation. Guidelines § 3E1.1, Application Note 5; *United States v. Grimes,* 899 F.2d 731 (8th Cir.1990); *United States v. Nunley,* 873 F.2d 182, 187 (8th Cir.1989). The district court observed that while Johnson was unwilling to accept responsibility for the totality of the jury's verdict, he did admit to substantial involvement. Johnson's role as a manager or supervisor is amply borne out by the record, which shows the breadth of his connections and distributions in the drug enterprise conspiracy. The district court did not improperly link Johnson's acceptance of the managerial role in the enterprise to acceptance of responsibility; by accepting the increase in his offense level in the district court, Johnson acknowledged the extent of his culpability in the entire drug enterprise. The district court could not be expected to know of the lack of communication between Johnson and his counsel. In the end, the arrangement no doubt worked to Johnson's advantage because the district court could have justifiably applied the managerial role increase even if Johnson had chosen to contest it. We do not find the district court's factual determinations clearly erroneous.

 Ramirez also contests the district court's four-level upward adjustment to his base offense level for acting as a leader or organizer. Ramirez contends that there is no direct evidence that he was a superior to anyone else involved in the drug conspiracy. A finding that a defendant is functioning as an organizer or leader, however, does not necessarily mean that he is direct-

ly controlling other individuals. Ramirez' record shows that he recruited Casas–Torres into the enterprise and instructed him on the techniques of drug dealing. He directed the deliveries of cocaine to Chicago. He was the supplier to Casas–Torres' and Johnson's entire cocaine distribution scheme. Accordingly, the district court correctly adjusted Ramirez' offense level upward for his role as an organizer and leader.

## CONCLUSION

Finding no merit in either defendant's asserted errors or the government's cross appeal, we affirm the district court's judgments and sentences in all respects.