**UNITED STATES of America, Appellee,**

v.

**Marie Rose CHARGER, Appellant.**

**No. 90–5194.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 1, 1990.

Decided March 29, 1991.

Al Arendt, Pierre, S.D., for appellant.

Mikal Hanson, Pierre, S.D., for appellee.

---

Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

LAY, Chief Judge.

The petition for rehearing filed by the United States is hereby granted. The opinion of our court previously filed is ordered vacated. This amended opinion and judgment shall now be filed.

Marie Rose Charger was convicted of involuntary manslaughter for driving her car in a grossly negligent manner which resulted in the death of Kim Bradley Goodlow.[1] She argues that there was insufficient evidence to support her conviction. She also appeals her seventeen month sentence, arguing that the trial court failed to give her a two level reduction for acceptance of responsibility. We affirm her conviction but remand to the district court for reconsideration of her sentence.

BACKGROUND

On October 19, 1989, Charger was driving her car at a speed of approximately forty-five to fifty miles per hour on a gravel road when her car got caught in a gravel windrow, went right, then left, then right again, and hit the shoulder of the road. She then over-corrected causing the car to roll into the ditch. She testified at the trial that she lost control of the car because William Sazue, another passenger in the car, had grabbed her face and had tried to kiss her. Her nephew, Kim Goodlow, was thrown from the car and the car rolled over him. He died at the scene from multiple skull fractures. Charger's condition was described as "buzzed" by several witnesses. Her blood alcohol level, measured two hours after the accident, was .153. Davis Gorroms, Jr., the Ambulance Director for the Lower Brule Sioux Tribe, testified that he took a beer from Charger's hand after the accident and that it was partially full. The next day Charger told FBI special agent Paul Pritchard that she had consumed approximately six to eight beers between 6:00 p.m. and midnight the night of the accident. Charger testified at trial that she had probably consumed four beers prior to the accident and two beers after the accident.

DISCUSSION

I. Sufficiency of the Evidence

■ Charger urges that the trial court erred in denying her motion for an acquittal because of insufficient evidence. She argues that the government failed to prove she was driving in a grossly negligent manner. She contends that the accident occurred because she was driving on a gravel road and when Sazue attempted to kiss her she lost control of the car. She claims that because there was evidence that she was drinking alcohol after the accident, her blood alcohol test level did not reflect her condition while driving.

Several witnesses described Charger's condition after the accident and there was testimony that everyone in the car had been drinking on the way back to Lower Brule from Fort Thompson. Charger's blood alcohol level was .153 two hours after the accident, which exceeds South Dakota's legal limit of .10. Cross-examination revealed that Charger's blood alcohol level could have been affected by many factors, such as the quantity of beer consumed after the accident, her weight, the amount of food consumed, as well as the elapsed time between the accident and the time of the test. Tr. at 149, 150, and 157–59. The conflicting evidence surrounding the extent of Charger's alcohol consumption before the accident was a question for the jury to consider. We find there was sufficient evidence for the jury to find Charger guilty of involuntary manslaughter.

II. Acceptance of Responsibility

■ Charger argues the district court erred in failing to give her a two level sentence reduction under the Sentencing Guidelines for her acceptance of responsibility for the crime. The district court sentenced Charger to seventeen months in prison based on her offense level of four-

---

**1.** Charger is an American Indian and the accident occurred on the Lower Brule Sioux Indian Reservation in South Dakota.

teen and criminal history category I. The Guidelines set a range of fifteen to twenty-one months of incarceration for this base level. U.S.S.G. Ch. 5, Part A. A two level sentence reduction for acceptance of responsibility would put Charger at an offense level of twelve with a sentencing range of ten to sixteen months. *Id.* Thus, the actual sentence Charger received exceeds the maximum sentencing range at level twelve by one month.[2] Even thirty days imprisonment, however, is a serious deprivation to any individual. Thus, we review the refusal to provide the two level reduction with careful concern.

A district court has discretion to grant a sentence reduction for acceptance of responsibility if it finds the defendant has " 'demonstrate[d] a recognition and affirmative responsibility' and 'sincere remorse' for the offense that he [or she] committed." *United States v. Knight*, 905 F.2d 189, 192 (8th Cir.1990) (quoting U.S.S.G. § 3E1.1); *United States v. Hill*, 911 F.2d 129, 131 (8th Cir.1990) (denying reduction for acceptance of responsibility because defendant did not express sorrow or wish that he had not committed crime), *petition for cert. filed*, No. 90–5999 (Oct. 18, 1990). "The fact that the defendant only pleads guilty is not conclusive in determining either that the defendant did accept responsibility or that the defendant did not accept responsibility." *United States v. Sklavenitis*, 905 F.2d 1166, 1168 (8th Cir.1990) (citing *Knight*, 905 F.2d at 191). We agree that the sentencing judge, however, "is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n. 5).

If the district court's refusal to credit Charger for acceptance of responsibility under section 3E1.1 was based on a finding that she lacked credibility, we must affirm.

We find, however, that the present record is ambiguous and uncertain in this regard. In one sense, the record indicates that the court believed that Charger did not tell the truth. The court found that Charger's statement to the FBI following the accident differed from her trial testimony. The court adopted the opinion of the probation officer, contained in the presentence investigation report ("PSI"), that Charger had testified for the first time at trial that Sazue had tried to kiss her, causing her to lose control of the car. PSI at 2. The probation officer found she had attempted to mitigate culpability by blaming Sazue. PSI at 3. The court found this testimony differed materially from the statement Charger had given to the FBI the day following the accident.[3] S.Tr. at 23–24.

The government argued that Charger should be found to have obstructed justice because of her lack of credibility. The government argued at the sentencing hearing that Charger had told the FBI on October 20, 1989, some twelve hours after the accident, a completely different version of the accident:

MR. HANSON: She indicated that she was driving approximately 45 to 50 miles per hour on the gravel down Counselor Hill which is loose gravel. She stated her vehicle got caught in the gravel and pulled to the right, towards the right shoulder of the road. The car then moved back, left and back to the right again. She recalled braking the car twice. As her car moved to the right again it hit the shoulder and then the wheels turned to the left.

Charger stated that she may have overcorrected and the vehicle went off the road. She does not recall her car flipping or rolling. I mean, that sounds very credible. That sounds very believa-

---

**2.** Although this may seem like a small deviation, we recognize that there exists a seven month difference between Charger's actual sentence and the minimum sentence required at level twelve.

**3.** The PSI reflects that Charger admitted to drinking four beers before the accident. PSI at

**3.** Charger told the FBI she probably drank six to eight beers between six p.m. and midnight. R. at 14. Her testimony at trial was that she probably had four beers before the accident and two beers after the accident. Tr. at 310, 316, 339, and 345.

ble. But that's not the testimony she gave at trial.

S.Tr. at 15–16. The government stated she did not testify to this version at trial. *Id.* The record belies that. Her more complete statement at trial did not in any way contradict this version of the accident. Her statement to the FBI was clearly exculpating. The fact that she added the specific detail, at trial, that Sazue grabbed her does not mean that she materially altered her story.

At the FBI interview, Charger did not volunteer any statements and the record fairly reflects that the FBI agent simply stated a factual reconstruction of the accident to which she responded "yes" or "no." S.Tr. at 19–20; *see also* Tr. at 321–22 and 335. She had suffered a head injury and knew that her son had been hurt and her nephew killed. The district court points out in specific terms that it *rejected* the government's argument that Charger should be given a two level enhancement for obstruction of justice because she allegedly gave "untruthful testimony regarding two material facts" (drinking and how the accident happened). S.Tr. at 29. The court specifically found Charger had no "evil intent." *Id.* Moreover, the probation officer reports in the PSI that:

> Marie Charger states she accepts full responsibility in the accidental death of her nephew. She admits drinking four beers prior to the accident and admits this may have been a contributing factor. Ms. Charger expresses remorse over Kim Goodlow's death. However, Ms. Charger mitigates her culpability with Mr. Sazue's actions, i.e. he grabbed her face, kissed her and distracted her prior to the accident. Consequently, no adjustment for acceptance of responsibility.

PSI at 3.

Thus, it is clear that the recommendation of the probation officer to deny an acceptance of responsibility adjustment is based on Charger's attempt to mitigate her responsibility at trial. This statement, however, is not materially different from the mitigating statement given to the FBI the day following the accident. Her statement to the FBI about the car getting caught in loose gravel, acknowledged by the government to be credible, provides little motivation for her to alter it at trial. It is the government's proof of excessive consumption of alcohol that provides the basis for her conviction for involuntary manslaughter. Whether her car rolled over because of the loose gravel, Sazue grabbing her, or both does not mitigate the excessive drinking.

At trial, Charger described the loose gravel on the road, going down the hill at forty-five to fifty miles per hour, and losing control when the car suddenly moved. More specifically, she stated:

> A. Okay, as we were going on the road there, I was driving and Bill and I was sitting there visiting, and then when we come up to the top of the hill there, well, Bill was trying to pull my face, and I told him to leave me alone because I was driving and that road was rough and so we come down the hill there, and as we come down to the bottom of the hill he grabbed my face and he pulled my face this way and I was trying to get away from him and the car went this way. (Indicating)
>
> Q. You mean "this way" to the right? (Indicating)
>
> A. To the right, and so I tried to get away from him and then I pulled it to the left, and then he still had a hold of my face and it pulled back again and he tried to correct it and he kept—he had a hold of my face like that, and the next think I know we were sliding.
>
> Q. What happened next after the sliding started?
>
> A. We started sliding and then I remember rolling and then I don't remember nothing else until I came to.

Tr. at 312–13.

In rejecting the reduction for acceptance of responsibility, the district court adopts the same reasoning as the probation officer:

> [A] two level reduction for acceptance of responsibility should be denied on the basis that I find that she did not tell the interviewing officer that some passenger

in the car interfered with her driving by striking her or, I can't remember whether it was striking or grabbing the wheel. I do recall that she did testify to that at the trial.

S.Tr. at 22.

However, the full text of the court's remarks provides our uncertainty as to the actual reason for rejecting Charger's acceptance of responsibility:

Now, the fact that she didn't tell the FBI agent that since it would be ostensibly to her favor, would indicate that she did not accept responsibility within the terms of the guideline 3E1.1[b]. . . . [H]er testimony was not consistent, particularly on, let us say at one time she was not truthful because she gave a different, well, I consider this was an important point in the trial whether or not someone had interfered with the steering wheel while she was trying to drive. Because I well remember that the evidence showed that the road was downhill, fairly steep and had gravel on it. So it was entirely credible to believe that one would get on there and if you're not going too fast, it's possible to get in the ditch without being guilty of gross negligence as was the key finding in the trial under the instructions of the Court.

But the difference in the statement—*I don't take the view that necessarily any different statement made pre-trial to an interviewing officer, that differed from what she said at the trial, would necessarily show that she was not cooperating.* But this was an important factor and the fact that she didn't tell it to the FBI also when he was asking her about the accident, it would have been logical to do so if it were so because it is certainly, I'd consider it quite a strong defense. But then not to appear in the case until she was on the witness stand, no explanation, well, I don't recall every single word of testimony. But I do recall that she did testify to that fact during the time she was on the witness

stand, but did not advise it when she was first interviewed about what happened.

Now, of course as far as acceptance of responsibility goes, really, *since it's only natural that when she testifies at the trial she isn't going to take responsibility. Otherwise she wouldn't be pleading not guilty and standing trial.* And in a way the failure to mention this alleged mishandling because of some other person in the car, if it really, well, I guess I'd have to say that she couldn't be right both times. So I conclude that the factors aren't present that would justify a two level reduction or any reduction for acceptance of responsibility.

S.Tr. at 22–24 (emphasis added).

The omission from Charger's original statement of the complete undisputed factual account surrounding the accident does not merit punishment. The additional facts Charger revealed later simply explained in more detail how the accident occurred. She did not contradict her earlier statement. The district court appears in part to reject her acceptance of responsibility because she testified at trial and did not plead guilty.[4]

The commentary under the Guidelines for acceptance of responsibility states that "[c]onviction by trial does not preclude a defendant from consideration under this section. A defendant may manifest sincere contrition even if he [or she] exercises his [or her] constitutional right to a trial." U.S.S.G. § 3E1.1, comment. (n. 2); *United States v. Johnson,* 906 F.2d 1285, 1291 (8th Cir.1990) (affirming reduction for acceptance of responsibility although defendant, while admitting substantial involvement, was unwilling to accept responsibility for totality of verdict); *United States v. Big Crow,* 898 F.2d 1326, 1330 (8th Cir.1990) (finding acceptance of responsibility even though defendant expressed doubt that he intentionally assaulted victim).

The PSI indicates that Charger expressed remorse and accepted full responsibility for her nephew's death. PSI at 3. She also admitted that alcohol was a con-

---

**4.** Earlier, however, the court had stated: "I'm definitely not making that finding because she

elected to plead not guilty and stand trial. . . ." S.Tr. at 23.

tributing factor. *Id.* Her testimony about Sazue's attempt to kiss her does not lessen her acceptance of responsibility. We have difficulty with the probation officer rejecting outright Charger's expression of remorse because the remorse came after her conviction. Under the Guidelines, a conviction does not preclude a defendant from consideration of acceptance of responsibility. U.S.S.G. § 3E1.1(b); *Johnson*, 906 F.2d at 1291; *Big Crow*, 898 F.2d at 1330.

Because of the district court's conflicting statements, we feel a remand to the district court is necessary. The court's comments that Charger did not accept responsibility because she went to trial must be weighed with the probation officer's outright rejection of an acceptance of responsibility reduction because her remorse came after conviction.

We remand to the district court to review the overall record. If the court intended to reject acceptance of responsibility because Charger lacked credibility then the court should affirm her sentence. On the other hand, if the court finds that she did not intend to lie about the accident, then the court should reconsider the sentence. This is especially true if the court denied the reduction for acceptance of responsibility simply because she pleaded not guilty, went to trial, and testified to factors which tended to mitigate her responsibility.

ARNOLD, Circuit Judge, concurring in part and dissenting in part.

I fully concur in the affirmance of the judgment of conviction. As to the reversal of the sentence, however, I respectfully dissent. The District Court was well within its rights not to give Ms. Charger a two-point reduction for acceptance of responsibility.

This Court's opinion convincingly demonstrates that there are ambiguities in this record. Portions of it, read in isolation, support the Court's decision to remand for a reconsideration of the sentencing decision by the District Court. My reading of the sentencing transcript, however, has convinced me that the reasons for the District Court's decision not to grant a two-point reduction for acceptance of responsibility are sufficiently clear to make a remand unnecessary. The quotation from the Court's remarks at sentencing, *ante* at 822, demonstrates this point to my satisfaction. When questioned by an FBI agent before trial, the defendant said nothing about the involvement of one of her passengers. But when she took the stand, she tried to put part of the blame on Mr. Sazue, saying that he pulled her face right before the car began to slide. I believe it is clear that the District Court found this trial testimony incredible. The Court said "she couldn't be right both times." Sentencing Tr. 24, quoted *ante*, at 822. It also said the involvement of another person was "an important factor and the fact that she didn't tell it to the FBI also when he was asking her about the accident, it would have been logical to do so if it were so because it is certainly, I'd consider it quite a strong defense." *Id.* at 822. The District Court's use of the subjunctive mood shows its meaning. "[I]t *would have been* logical to" tell the FBI agent about the other person's action "if it *were* so" (emphasis mine). The Court did not believe that it *was* so—did not believe that Mr. Sazue had done what Ms. Charger said. It did not believe it because it was the kind of thing that a truthful person would have said at the earliest opportunity.

At trial, the defendant attempted to avoid responsibility by telling a story materially different from her pretrial statement. The jury returned a verdict of guilty, evidently not believing her trial testimony. The District Court, as I have tried to indicate, seems not to have believed it, either. Accordingly, it was not error for the District Court to deny the two-point reduction in question. I would affirm both the conviction and the sentence.