# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-2759

_____

United States of America

*Plaintiff - Appellee*

v.

Harold Hank Bolman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: October 18, 2019
Filed: April 21, 2020

_____

Before COLLOTON, WOLLMAN, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

A jury convicted Harold Bolman of involuntary manslaughter after he struck and killed his nephew with his truck. On appeal, Bolman challenges the sufficiency

of the evidence against him and the district court's[1] instructions to the jury. Because we find no basis for reversal, we affirm.

## I. Background

On July 25, 2016, Bolman and his nephew, William White Eagle, were visiting friends and drinking heavily in Solen, North Dakota, on the Standing Rock Reservation. Before the day was over, Bolman got behind the wheel of his Dodge Ram 3500 dually pickup truck and backed over White Eagle, who died from mechanical asphyxiation. Law enforcement responded to the scene and gave Bolman a breathalyzer, which showed a blood alcohol concentration of .205. Bolman admitted he had been drinking "a lot" all day and that he had "backed up and ran over" his nephew. While there were no eyewitnesses to the actual incident, at least two people, Janet Seewalker and Stephen Himes, came upon the scene to find Bolman sitting in the driver's seat of the pickup with the engine running and White Eagle's body under the rear tires. A third person, Mark Pettitt, saw Bolman standing beside the truck and heard him ask whether White Eagle had died.

The grand jury indicted Bolman on one count of involuntary manslaughter in violation of 18 U.S.C. §§ 1112 and 1153.[2] Bolman proceeded to trial. At the close of the government's case, he moved for a Rule 29 acquittal based on insufficient evidence. The district court denied the motion, and the jury returned a guilty verdict.

---

[1]The Honorable Daniel L. Hovland, then Chief Judge, United States District Court for the District of North Dakota.

[2]18 U.S.C. § 1153 provides, "Any Indian who commits . . . manslaughter . . . within the Indian country . . . shall be subject to . . . the exclusive jurisdiction of the United States." Bolman does not dispute that he is an American Indian or that the relevant events in this case occurred within Indian Country.

The district court later sentenced Bolman to 51 months in prison and three years of supervised release, and ordered him to pay $6,340 in restitution.

Bolman raises two arguments on appeal. First, he asserts the trial evidence was insufficient to support his conviction for involuntary manslaughter because the government did not establish that he was grossly negligent. Second, he argues the district court plainly erred by failing to instruct the jury that "actual knowledge" is a distinct element of the offense.

## II. Sufficiency of the Evidence

"In reviewing the denial of a motion for a judgment of acquittal, we review the sufficiency of the evidence *de novo*, evaluating the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor." United States v. Parker, 871 F.3d 590, 600 (8th Cir. 2017) (citation omitted). We will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. United States v. Ways, 832 F.3d 887, 894 (8th Cir. 2016).

Bolman was convicted under 18 U.S.C. § 1112, which defines involuntary manslaughter as "the unlawful killing of a human being without malice . . . [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112(a). Although this statute does not expressly include a particular *mens rea* as an element of the crime, we have said that a conviction for involuntary manslaughter requires proof beyond a reasonable doubt that the defendant

> acted grossly negligently in that he acted with a wanton or reckless
> disregard for human life, knowing that his conduct was a threat to the
> lives of others or having knowledge of such circumstances as could

-3-

reasonably have enabled him to foresee the peril to which his act might subject others.

United States v. Opsta, 659 F.2d 848, 849 (8th Cir. 1981) (quoting United States v. Schmidt, 626 F.2d 616, 617 (8th Cir. 1980)). Gross negligence is "a far more serious level of culpability than that of ordinary tort negligence, but still short of the extreme recklessness, or malice required for murder." United States v. One Star, 979 F.2d 1319, 1321 (8th Cir. 1992).

Bolman argues there was insufficient evidence to establish that he operated his pickup truck "in a grossly negligent manner" when he struck White Eagle. He contends the government relied solely on the fact that he drove while intoxicated to show gross negligence. This is insufficient, according to Bolman, because driving under the influence of alcohol is a strict liability offense in North Dakota that requires no culpable mental state. See State v. Glass, 620 N.W.2d 146, 151 (N.D. 2000). Bolman also faults law enforcement for not performing any accident reconstruction. Without this, he argues, there was no evidence showing the speed or distance his truck traveled, nor where White Eagle was located at the relevant time.

Bolman's argument takes an overly narrow view of the trial evidence. When the evidence is viewed in its entirety, the jury could reasonably conclude beyond a reasonable doubt that Bolman acted in a grossly negligent manner. Bolman admitted to law enforcement that he had been drinking "a lot" throughout the day of White Eagle's death. Multiple trial witnesses, including Himes and Pettitt, confirmed that Bolman had been drinking that day. Police officer Raymond Webb, who responded to the scene, testified that Bolman appeared drunk because he could not speak clearly, needed help walking, and smelled of alcohol and urine. Bolman's blood alcohol concentration registered at .205 shortly after the incident.

The government also presented evidence showing that Bolman understood the dangerous nature of his conduct. He told officers that earlier in the day he had gone to Bismarck to shop with Pettitt and White Eagle but had been too drunk to even enter the store. He admitted he did not know "what [he] would be doing driving" that day because he normally "wouldn't go anywhere drunk." The jury could reasonably interpret these statements to mean that Bolman knew of the threat that his drinking and driving posed to others.

Despite this awareness, Bolman got behind the wheel of his large pickup truck. He admitted that he did not use his truck's backup camera because "he never did get used to that"—even though he was backing up on a residential street where people frequently traveled. At least four witnesses who lived near the area testified that they had walked or driven on that same stretch of road on the day White Eagle died.

Even accepting Bolman's argument that driving while intoxicated, by itself, is insufficient to show gross negligence, Bolman ignores other relevant trial evidence: his relatively high level of intoxication, his knowledge of his intoxication and the threat that it posed to others if he drove, that he drove on a residential street where people often traveled, and his decision not to use the backup camera on his pickup truck. And while the government might have had a stronger case had law enforcement officers reconstructed the scene, it is not clear that the jury needed to know, as Bolman suggests, the speed or angle at which he struck White Eagle. Construing the evidence in the light most favorable to the verdict, a reasonable jury could find Bolman grossly negligent beyond a reasonable doubt.

### III. Jury Instruction

Bolman next argues the district court erred by failing to instruct the jury that actual knowledge is an essential element of the offense that is separate from gross negligence. We typically review a challenge to jury instructions for an abuse of

discretion, but because Bolman failed to object to the district court's instructions, we review only for plain error. See United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011). To obtain relief under plain-error review, the party seeking relief must show that there was an error; the error is clear or obvious under current law; the error affected the party's substantial rights; and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id.

"The district court has wide discretion in formulating appropriate jury instructions." Id. (quoting United States v. Cruz-Zuniga, 571 F.3d 721, 725 (8th Cir.2009)). An instruction is plainly erroneous if it misstates the law. United States v. Fast Horse, 747 F.3d 1040, 1042 (8th Cir. 2014). On the other hand, instructions are proper "if, taken as a whole, they adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government." Id. (cleaned up); see also Cupp v. Naughten, 414 U.S. 141, 146–47 (1973) ("[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.").

The district court's final instructions to the jury listed the essential elements of involuntary manslaughter as:

> One, the Defendant caused the death of William White Eagle as a result of an act done by the Defendant during the commission of an unlawful act not amounting to a felony, namely driving a motor vehicle under the influence of alcohol;
>
> Two, during the commission of the unlawful act, the Defendant acted with gross negligence;
>
> Three, The crime occurred within Indian Country; and
>
> Four, The Defendant is an Indian.

The instructions also included a definition of "gross negligence," which read:

> Gross negligence, an essential element of involuntary manslaughter, means that a person acted with wanton and reckless disregard for human life, knowing that his conduct was a threat to the lives of others or having knowledge of such circumstances as could reasonably have enabled him to foresee that his conduct might be a threat to others.

Bolman concedes that plain-error review applies, but he asserts that the instructions were plainly erroneous because they "included the actual knowledge language within the definition of gross negligence." According to Bolman, the jury "was never instructed that actual knowledge, as a separate element, required proof beyond a reasonable doubt."

A set of jury instructions that separates the definition of "gross negligence" from that of "actual knowledge" has support in the law.[3] Our leading decision in Schmidt relied on Ninth Circuit precedent analyzing the involuntary manslaughter statute. See Schmidt, 626 F.2d at 617 (citing United States v. Keith, 605 F.2d 462 (9th Cir. 1979)). The Keith court held that, to prove a defendant guilty of § 1112 involuntary manslaughter, the government must establish: "(1) that the defendant acted with 'gross negligence,' defined as 'wanton or reckless disregard for human life,'" and "(2) that the defendant had actual knowledge that this conduct was a threat to the lives of others, or had knowledge that his conduct was a threat to the lives of

---

[3]As Bolman notes, the committee comments to this court's model instructions for involuntary manslaughter state: "Actual knowledge of a threat to the lives of others, or knowledge of circumstances that would allow the defendant to foresee the life-threatening nature of his conduct, is a separate element of the crime which must be established in addition to gross negligence." See Eighth Circuit Model Criminal Jury Instruction 6.18.1112B, committee comments (2017) (citing Opsta, 659 F.2d at 849; Schmidt, 626 F.2d at 617). The model instructions, however, "are not binding on the district courts of this circuit, but are merely helpful suggestions." United States v. Norton, 846 F.2d 521, 525 (8th Cir. 1988).

others, or had knowledge of such circumstances as could reasonably be said to have made foreseeable to him the peril to which his acts might subject others." Keith, 605 F.2d at 463. This is consistent with how other circuit courts have described § 1112's essential elements. See, e.g., United States v. Benally, 756 F.2d 773, 776 (10th Cir. 1985); United States v. Tresvant, 677 F.2d 1018, 1023 (4th Cir. 1982).

Bolman correctly notes that the four essential elements in the district court's instructions did not mention knowledge, but he overlooks the fact that the jury was instructed elsewhere that it must find that Bolman had "knowledge" in order to convict. The instructions listed "gross negligence" as an essential element that the government must prove beyond a reasonable doubt. The instructions then defined gross negligence to mean that

> a person acted with wanton and reckless disregard for human life, *knowing* that his conduct was a threat to the lives of others or having *knowledge* of such circumstances as could reasonably have enabled him to foresee that his conduct might be a threat to others.

(Emphasis added). This mirrors the language we used in Opsta and Schmidt, which held that § 1112 requires proof that the defendant

> acted grossly negligently in that he acted with a wanton or reckless disregard for human life, knowing that his conduct was a threat to the lives of others or having knowledge of such circumstances as could reasonably have enabled him to foresee the peril to which his act might subject others.

See Opsta, 659 F.2d at 849 (quoting Schmidt, 626 F.2d at 617). The instruction itself reiterated that gross negligence is "an essential element of involuntary manslaughter."

The district court crafted the instructions in accordance with our case law, and when viewed as a whole, they adequately advised the jury of the essential elements of the offense and the government's burden of proof. <u>See</u> <u>Fast Horse</u>, 747 F.3d at 1042; <u>see also</u> <u>United States v. Udofot</u>, 711 F.2d 831, 839 (8th Cir. 1983) ("Although the instructions could have been worded differently, when viewed as a whole, they accurately and adequately define the essential elements of the offense."). Bolman has not shown plain error.

The judgment of the district court is affirmed.

_____