# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3793
_____

United States of America

*Plaintiff - Appellee*

v.

Daniel Brown

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Aberdeen

_____

Submitted: November 20, 2020
Filed: March 26, 2021

_____

Before SHEPHERD, STRAS, and KOBES, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

After a jury convicted Daniel Brown of one count of involuntary manslaughter stemming from a drunk-driving accident that resulted in the death of one of his passengers, the district court[1] sentenced him to 60 months imprisonment, which

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

represented an upward departure from the United States Sentencing Guidelines range of 41 to 51 months imprisonment. Brown appeals both his conviction and sentence, asserting that the evidence was insufficient to support his conviction and that his sentence was both procedurally unsound and substantively unreasonable. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

"We recite the facts in the light most favorable to the jury's verdict." United States v. Galloway, 917 F.3d 631, 632 (8th Cir. 2019) (quoting United States v. Daniel, 887 F.3d 350, 353 (8th Cir. 2018)).

On September 8, 2018, Brown spent the day with three friends, Dionne Brown Otter, Jeremiah Skinner, and William Little Bear, drinking alcoholic beverages and driving in Brown's vehicle around the Bullhead, South Dakota area. Shortly after 7:45 p.m., Brown drove his vehicle off the paved roadway and began to ascend a steep, unpaved hill. The hill had only a dirt path that was not fit for vehicles; it was instead a common hiking path for people in the Bullhead area. Brown drove the vehicle along the grassy area beside the dirt path. Before reaching the top of the hill, the vehicle became stuck on a post that was protruding out of the ground. When Brown was unable to drive the vehicle over the post, he put it in reverse to attempt to back off the post. While moving in reverse, Brown applied the brakes and made a hard right turn, which caused the vehicle to flip over and roll two to three times before coming to a stop. Both Brown Otter and Skinner were ejected from the vehicle. Brown Otter was pronounced dead at the scene, having suffered injuries to her cervical spine, ribs, lungs, and brain, while Skinner suffered serious head injuries but survived. Brown, who stands 6 feet 4 inches tall and weighs roughly 300 pounds, was not ejected from the vehicle. At the hospital following the accident, Brown admitted to medical staff that he recalled the entire accident, that the vehicle had slipped down a steep hill before rolling, and that he had consumed alcoholic beverages prior to the accident. Testing revealed Brown's blood alcohol concentration level to be .22, well over the .08 legal limit in South Dakota. Brown's

-2-

blood also tested positive for the presence of methamphetamine. Brown was subsequently indicted on one count of involuntary manslaughter, in violation of 18 U.S.C. §§ 1112 and 1153.[2]

At trial, Brown Otter's sister, Corrie Brown Otter, testified about the events of that evening, stating that shortly before the accident, she saw the group in Brown's vehicle and stopped to talk to them. She identified Brown as driving the vehicle, with her sister in the front passenger seat and Skinner and Little Bear in the back seat behind the driver's seat and passenger's seat, respectively. Corrie Brown Otter also arrived at the accident scene just moments after the accident and saw both Skinner and Brown Otter on the ground and Little Bear and Brown in the vehicle. Little Bear was in the back seat of the vehicle and Brown was in the front passenger seat. Diana Spotted Horse, Brown Otter's cousin, also testified at trial. She testified that she had seen the group driving in Brown's vehicle roughly 20 to 30 minutes before the accident and she observed Brown driving, Brown Otter in the passenger seat, Skinner behind Brown, and Little Bear behind Brown Otter. The jury also heard testimony from Brown Otter's nephew, Dane Yellow Earrings. Yellow Earrings testified that he was playing at the park on the day of the accident and watched Brown drive his vehicle at a high rate of speed up the hill. He also observed Brown Otter in the front passenger seat with Little Bear behind her and Skinner behind Brown. Yellow Earrings stated that as the car was ascending the hill, he saw the driver lose control, saw the car begin to roll over backwards down the hill, and noticed that the brake lights lit up.

Skinner, also testified at trial that he last remembered Brown driving the vehicle, with Brown Otter seated in the passenger seat, Little Bear behind Brown Otter, and Skinner behind Brown. Allen CetanInyka testified that he observed

---

[2]Section 1153 contains the jurisdictional element of the manslaughter offense under 18 U.S.C. § 1112, providing "[a]ny Indian who commits . . . manslaughter . . . within the Indian country . . . shall be subject to . . . the exclusive jurisdiction of the United States." Brown does not dispute that he is an American Indian or that the relevant events in this case occurred within Indian country.

Brown driving the vehicle with Little Bear in the back seat immediately before the accident. He observed Brown drive up the hill, the brake and reverse lights come on, the vehicle roll over, and an individual ejected from the vehicle while it was rolling over. Trayvon Spotted Horse, Diana Spotted Horse's son, testified that he saw Brown driving the vehicle roughly 20 to 30 minutes before the accident, with Brown Otter seated in the passenger seat and Little Bear and Skinner seated in the back seat. Spotted Horse testified that he observed the vehicle traveling at a high rate of speed with the wheels spinning out.

Brown presented two witnesses who contradicted the testimony that Brown was driving the vehicle at the time of the accident. Alex Little Eagle, a close friend of Brown's, and Jada Archambault, a relative of Brown's, both testified that they saw Brown's vehicle shortly after 7:00 p.m. on the date of the accident and that they had seen Brown Otter driving the vehicle. As a rebuttal witness, the government called Arden Little Eagle, who testified that he spoke with Brown when Brown stopped his vehicle at Arden Little Eagle's house the night of the accident. Arden Little Eagle testified that he saw Brown driving and squealing his tires, and that the accident occurred within five to ten minutes of Brown driving away from Arden Little Eagle's residence.

FBI Special Agent Ted Grant, who investigated the accident, was questioned at trial about photos depicting the crash site. Special Agent Grant described exhibits depicting a black and grey tennis shoe in the front seat that was a men's size 12W and a bottle of Southern Comfort alcohol behind the pedal of the vehicle. Special Agent Grant also testified about his interview of Brown, which took place two days after the accident. After being advised of his Miranda[3] rights, Brown stated to Special Agent Grant that he had no recollection of the accident and neither denied that he was the driver nor made any mention of the other parties involved. Trooper Jordan Melius arrived at the crash scene shortly after the accident. She testified that

---

[3]Miranda v. Arizona, 384 U.S. 436 (1966).

she saw debris strewn about the site, including numerous alcohol bottles and beer cans.

South Dakota Highway Patrol Trooper John Berndt testified at trial about his examination of the vehicle following the accident. He noted that the driver's side door of the vehicle was wedged shut, the battery to the vehicle was dead, and the driver's seat was positioned so that it was as far back from the steering wheel as possible. Trooper Berndt testified that this observation was notable because it indicated to him the driver's seat could not have been moved after the accident due to the dead battery and that the way the driver's seat was positioned demonstrated the driver of the vehicle was large. During the physical examination of the vehicle, Trooper Berndt removed the vehicle's "black box" to extract the data from the time of the accident. Trooper Berndt testified that the data revealed the last recorded event was a rollover and that the brake had been applied until the last second of this event. Trooper Berndt opined that, based on the data, a large person would have been braking during the rollover and that the driver of the vehicle had not been ejected.

At the close of the government's case, Brown moved for a judgment of acquittal, which the district court denied. At the close of all the evidence, Brown again moved for a judgment of acquittal, which the district court again denied, concluding that the government presented sufficient evidence for the case to go to the jury. The jury then returned a guilty verdict. At sentencing, the district court adopted the United States Probation Office's presentence investigation report (PSR), which, based upon an offense level of 22 and a criminal history category of I, calculated the Guidelines range at 41 to 51 months imprisonment. The PSR noted that Brown had a significant tribal criminal history, which, if counted, would have resulted in a criminal history category of III. The tribal criminal history included six convictions for driving under the influence and noted that Brown was arrested for a driving under the influence offense roughly three months after the accident giving rise to these proceedings. After hearing arguments from the parties, the district court granted the government's motion for an upward departure because the criminal

history category of I substantially underrepresented Brown's criminal history, specifically as it related to his significant tribal criminal history. The district court found that the appropriate criminal history category was III, resulting in a Guidelines range of 51 to 63 months imprisonment. The district court then imposed a sentence of 60 months imprisonment, followed by a 3-year period of supervised release and a special assessment of $100. Brown now appeals his conviction and sentence.

## II.

Brown first asserts that the district court erred in denying his motion for a judgment of acquittal based on the insufficiency of the evidence, asserting that the government failed to introduce sufficient evidence proving Brown was the driver of the vehicle or that Brown operated the vehicle in a reckless and wanton manner. "We review the denial of a motion for judgment of acquittal de novo. 'We must affirm a jury verdict if, taking all facts in the light most favorable to the verdict, a reasonable juror could have found the defendant guilty of the charged conduct beyond a reasonable doubt.'" United States v. Sainz Navarrete, 955 F.3d 713, 718 (8th Cir. 2020) (citations omitted).

Brown was charged with involuntary manslaughter under 18 U.S.C. § 1112, which prohibits "the unlawful killing of a human being without malice . . . [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." Section 1112 does not contain a specific mens rea requirement; however, we have held that to convict a defendant of involuntary manslaughter, the government must prove, beyond a reasonable doubt, that the defendant

> acted grossly negligently in that he acted with a wanton or reckless disregard for human life, knowing that his conduct was a threat to the lives of others or having knowledge of such circumstances as could reasonably have enabled him to foresee the peril to which his act might subject others.

United States v. Bolman, 956 F.3d 583, 586 (8th Cir. 2020) (citation omitted). Gross negligence for the purposes of involuntary manslaughter "is 'a far more serious level of culpability than that of ordinary tort negligence, but still short of the extreme recklessness, or malice required for murder.'" Id. (citation omitted).

As to Brown's contention that there was insufficient evidence to prove he was the driver of the vehicle, we disagree. The government introduced significant evidence that Brown was driver of the vehicle, including the testimony of numerous witnesses who observed Brown driving the vehicle shortly before the accident, including his passenger, Skinner; physical evidence that the driver's seat was situated in the farthest back position, that the driver's door was inoperable, that Brown was not ejected from the vehicle, and that a large man's shoe was found near the pedal; and expert testimony that the driver would have been a large individual, matching Brown's physical attributes. Brown's challenge largely rests on his disagreement with the jury's credibility determinations regarding the trial witnesses and on purported inconsistencies in the testimony of Dane Yellow Earrings and Trayvon Spotted Horse. But "[t]he jury has sole responsibility for resolving conflicts or contradictions in testimony, and we must resolve credibility issues in favor of the verdict." United States v. Harlan, 815 F.3d 1100, 1106 (8th Cir. 2016) (citation omitted). We conclude that the evidence was sufficient for the jury to find, beyond a reasonable doubt, that Brown was the driver of the vehicle.

As to Brown's contention that, even if the government could prove that he was the driver of the vehicle, it failed to prove that he acted with wanton or reckless disregard for human life, we are similarly unpersuaded. Brown asserts, in essence, that Brown Otter's death was nothing more than a tragic consequence of his vehicle inadvertently becoming stuck on the protruding post. But Brown's argument ignores both his state of intoxication and the facts surrounding the event. Brown's blood alcohol concentration level was at .22, well above South Dakota's legal limit of .08. Evidence of Brown's intoxication alone provided a sufficient basis for the jury to conclude that his operation of the vehicle was grossly negligent. See United States v. Charger, 928 F.2d 818, 819 (8th Cir. 1991) (holding evidence of defendant's

extreme intoxication was sufficient for the jury to find that defendant had been driving in a grossly negligent manner when she caused an accident resulting in death of another). But, in addition to Brown's intoxication, other facts support the jury's conclusion that he acted with wanton or reckless disregard for human life, including that he drove the vehicle up a steep incline not suitable for vehicles, he gunned the vehicle in reverse after it became stuck on the protruding post, and he turned the wheel while the car was moving in reverse, causing it to flip. Taken together, these facts and Brown's level of intoxication are sufficient to support the jury's conclusion, beyond a reasonable doubt, that Brown acted in a grossly negligent manner. See Bolman, 956 F.3d at 586-87 (finding evidence sufficient to sustain conviction for involuntary manslaughter where defendant admitted to drinking before accident resulting in death, had a blood alcohol concentration of .205 shortly after accident, and government presented evidence that defendant understood the dangerous nature of his conduct). Further, even if Brown had presented a plausible theory regarding the accident being the tragic consequence of an errant protruding post, the jury was entitled to credit the government's theory of the case over Brown's "tragic accident" theory. See United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004) ("'If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction.' '[To secure a guilty verdict, t]he government . . . "need not exclude every reasonable hypothesis of innocence."'" (citations omitted)). Sufficient evidence supported the jury's verdict; the district court thus did not err in denying Brown's motions for judgment of acquittal.

## III.

Brown next asserts that the district court erred in sentencing him to 60 months imprisonment, asserting that the sentence is both procedurally flawed and substantively unreasonable. "We review a district court's sentence in two steps, first reviewing for significant procedural error, and second, if there is no significant procedural error, we review for substantive reasonableness." United States v. Ayres, 929 F.3d 581, 582-83 (8th Cir. 2019).

Brown asserts that the district court procedurally erred in sentencing him because it (1) departed upwards without consideration of Brown's argument for leniency; (2) failed to adequately explain the rationale for Brown's sentence; and (3) failed to consider the 18 U.S.C. § 3553(a) factors when it focused on Brown's criminal history to the exclusion of all other factors. Because Brown did not raise any objection to any purported procedural error at sentencing, "the error is forfeited and may only be reviewed for plain error." United States v. Thigpen, 848 F.3d 841, 847 (8th Cir. 2017) (citation omitted). "Under plain error review, the defendant must show: (1) an error; (2) that is plain; and (3) that affects substantial rights." Id. (citation omitted). "Procedural errors include 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" United States v. Godfrey, 863 F.3d 1088, 1094-95 (8th Cir. 2017) (citation omitted). We are unpersuaded by each of Brown's contentions.

The sentencing transcript makes clear that the district court considered each of Brown's arguments, including that for leniency, but decided to depart upwards based on Brown's underrepresented criminal history of multiple tribal convictions. Under § 4A1.3(a)(1) of the Sentencing Guidelines, "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." "The district court may look to prior sentences that were not used in calculating the criminal history category, including sentences for tribal offenses." United States v. White Twin, 682 F.3d 773, 776 (8th Cir. 2012). The district court spent significant time discussing Brown's multiple convictions in tribal court for driving under the influence, Brown's apparent substance abuse issues, and the fact that he was arrested for another drunk driving offense after the accident in this case occurred. That the district court rejected Brown's counsel's requests for leniency based on this record does not amount to procedural error, much less one that is plain.

Brown's next contention, that the district court failed to adequately explain the rationale for his sentence, is simply without merit. The district court discussed, at significant length, precisely the reasons for the sentence imposed, namely that "with all these terrible driving records in tribal court, and other accidents" Brown "really doesn't qualify" for a criminal history category of I. The district court recognized its authority to consider tribal convictions that had not been counted in the criminal history category calculation, and given the seriousness of those offenses, it decided to depart upward to better represent the nature of those offenses. And, in its statement of reasons, the district court expressly stated that, if the tribal convictions were considered as part of Brown's criminal history category calculation, he would have been in category III, rather than category I. Further, the district court noted that Brown appeared to show no remorse for his actions, specifically detailing an incident in which Brown threatened officers following an arrest for driving under the influence. On this record, the district court provided a more than adequate rationale for its decision to depart upward and for its ultimate imposition of a 60-month sentence. We thus find no error, much less one that is plain, in the district court's explanation of Brown's sentence.

Finally, Brown's argument that the district court failed to consider all § 3553(a) factors by placing emphasis on his previous tribal convictions is similarly without merit. Although the district court did not explicitly mention each § 3553(a) factor in a formulaic manner, the record reflects that the district court was aware of the factors and adequately considered them in reaching its sentencing decision. See United States v. Benton, 627 F.3d 1051, 1055 (8th Cir. 2010) ("Although the court could have made specific reference to other factors relevant under § 3553(a), we are satisfied that the court was aware of the statute and adequately considered it in determining the appropriate sentence."). Brown's desire for a more formulaic recitation of the § 3553(a) factors does not amount to procedural error. See United States v. Overbey, 696 F.3d 702, 705 (8th Cir. 2012) ("'In explaining the sentence the district court need only "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority.'" '[A]ll that is generally required to satisfy the

appellate court is evidence that the district court was aware of the relevant factors.'" (alterations in original) (citations omitted)).  Accordingly, we find no error, much less any plain error, in the district's court's consideration of the § 3553(a) factors.

Brown also asserts that the district court imposed a substantively unreasonable sentence by placing significant emphasis on Brown's criminal history to the exclusion of all other factors in fashioning his sentence.  "When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply 'a deferential abuse-of-discretion standard.'" United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (citation omitted).   An abuse of discretion occurs where the district court  "(1) 'fails to consider a relevant factor that should have received significant weight'; (2) 'gives significant weight to an improper or irrelevant factor'; or (3) 'considers only the appropriate factors but in weighing those factors commits a clear error of judgment.'"  Id. (citation omitted).  However, "it will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." Id. at 464 (citation omitted).  Brown's assertion of substantive unreasonableness amounts to nothing more than a disagreement with how the district court chose to weigh the § 3553(a) factors in fashioning his sentence.  The record makes clear that the district court considered each argument but found Brown's extensive history with drunk driving incidents and his lack of remorse to be more significant in reaching an appropriate sentence.  A district court has "wide latitude" to assign weight to give factors, and "[t]he district court may give some factors less weight than a defendant prefers or more weight to other factors, but that alone does not justify reversal." United States v. Moua, 895 F.3d 556, 560 (8th Cir. 2018) (per curiam).  Nothing in the record suggests that this is one of those "unusual" cases where the sentence is substantively unreasonable.  The district court thus did not err in sentencing Brown.

## IV.

For the foregoing reasons, we affirm.

_____