# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3546

_____

United States of America

*Plaintiff - Appellee*

v.

Derrecol Jennings

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 25, 2024
Filed: February 10, 2025

_____

Before SMITH, ERICKSON, and STRAS, Circuit Judges.

_____

SMITH, Circuit Judge.

Derrecol Jennings pleaded guilty to one count of illegally possessing a firearm, in violation of 18 U.S.C. § 922(g)(1), in exchange for the parties' joint recommendation that Jennings receive 40 months' imprisonment. The district court[1]

---

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

sentenced Jennings to 54 months' imprisonment. Jennings argues that the government breached the plea agreement by informing the court at sentencing that it made a mistake calculating Jennings's criminal history score when negotiating the joint recommendation. He also argues that his 54-month sentence was substantively unreasonable. We affirm.

## I. *Background*

On November 13, 2020, St. Louis police officers pulled Jennings over for having improperly registered plates on the vehicle. A record check revealed Jennings had active municipal arrest warrants and past felony convictions. Jennings informed officers of a gun under the middle seat, and the officers found a loaded semi-automatic pistol and magazines with ammunition.

Jennings was later indicted on one charge of illegally possessing a firearm, in violation of 18 U.S.C. § 992(g)(1). Jennings and the government entered into a plea agreement. In it, Jennings agreed to plead guilty in exchange for the parties' "joint recommendation that Defendant be sentenced [to] forty (40) months imprisonment." R. Doc. 79, at 2.

Jennings's criminal history included an armed robbery committed when he was 16 in 1993. In that incident, Jennings put a gun to the temple of a victim and shot the victim in the back as the victim attempted to flee. Jennings was convicted on 6 felony counts and sentenced to 30 years' imprisonment. While incarcerated, Jennings received at least 75 conduct violations, including assaulting another inmate, threatening to kill a cellmate, and exposing himself to a female corrections officer. In 2010, Jennings was paroled at the age of 32. While on parole, Jennings incurred multiple convictions for drug offenses and tampering with a motor vehicle. He also received numerous drug-related parole violations for failure to report, failure to comply, and failure to complete substance abuse treatment courses.

When Jennings was indicted in 2021 for the instant offense, he was granted conditional pretrial release. The relevant condition prohibited him from using or

unlawfully possessing narcotics or controlled substances. While on release, Jennings received ten conduct violations for missing drug tests and testing positive for controlled substances, including cocaine and fentanyl. During this time, Jennings also received a comprehensive mental health assessment that diagnosed him with schizophrenia, PTSD, depression, and generalized anxiety disorder. The district court revoked Jennings's bond in April 2023.

The PSR determined that Jennings's total offense level was 17 and that his criminal history score was 11, putting him in criminal history category V with a Guidelines range of 46 to 57 months. Notably, when the parties negotiated the joint recommendation, the government erred in calculating Jennings's criminal history score. The error put him in category IV with a Guidelines range of 37 to 46 months. The PSR prepared by the probation office noted several sentencing factors under 18 U.S.C. § 3553(a) that the district court may wish to consider if it wanted to impose a sentence outside the Guidelines range. The PSR, however, did not recommend nor suggest a downward variance from the properly calculated Guidelines range.

At the sentencing hearing, the district court adopted the PSR, explained the § 3553(a) factors, and heard defense counsel's argument. The court invited the government to address the sentencing factors, but the government declined to make any additional statements with respect to sentencing and asked the court to accept the joint recommendation. The court then asked the government why it recommended 40 months, a downward variance from the Guidelines range of 46 to 57 months, despite Jennings's numerous bond violations.

> THE COURT: Let me just ask you this, I guess I'm troubled by all of the violations while he was on pretrial release. And honestly, it is hard for me to understand how there could be a recommendation for a downward variance given all of those violations of bond.

GOVERNMENT: Well, your Honor, to be candid with the Court, when we negotiated this 40 month recommendation, I did not account for the additional two points under Section 4A 1.E—I believe it is, that the Defendant was assessed for the crime that he committed in 1994. I counted for the three points, but not the additional two. So my understanding is that it was a mistaken assumption, a lesson learned on my part.

THE COURT: I'm not trying to go back into those calculations, but just tell me, you know, I guess fundamentally, it is hard for me to understand the recommendation for a downward variance for all of the bond violations.

GOVERNMENT: I appreciate that. The bond violations consisted of all substance abuse violations. And since his 1994 crime, the Defendant has not been convicted of any crimes of violence. So I regard his violations while on bond to represent primarily that he may be a danger to himself, more than to others, but I absolutely appreciate the Court's concerns regarding those, and—

THE COURT: Again, I understand that, I suppose. Again here today, the Government is recommending a sentence of 40 months; is that correct?

GOVERNMENT: That's right, your Honor.

R. Doc. 100, at 11–12. After giving Jennings and his counsel an opportunity to speak, the court noted the substantial weight it generally accorded joint recommendations. The court, however, refused to accept this joint recommendation based upon its consideration of the § 3553(a) factors and Jennings's pattern of conduct, parole behavior, and bond violations. The court concluded that these considerations demonstrated that Jennings was not amenable to supervision and unlikely to be law abiding. Consequently, the court imposed a 54-month sentence, which it found appropriate given the sentencing factors and objectives.

## II. *Discussion*

Jennings argues, for the first time on appeal, that the government breached the plea agreement by informing the court that the joint recommendation for a downward variance was based on a mistaken calculation of Jennings's criminal history score. Additionally, he argues that the 54-month sentence is substantively unreasonable because the district court committed a clear error of judgment in weighing the § 3553(a) factors.

### A. *Breach of the Plea Agreement*

Because Jennings did not raise this issue below, we review the issue for plain error. *See United States v. Baker*, 674 F.3d 1066, 1068 (8th Cir. 2012). To find plain error, we must find "(1) error, (2) that is plain, and (3) that affects substantial rights." *Id.* (quoting *United States v. Lovelace*, 565 F.3d 1080, 1087 (8th Cir. 2009)). If those elements are met, the "error may be remedied 'only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Lovelace*, 565 F.3d at 1087).

Jennings contends that the government breached the plea agreement when it explained its Guidelines-range miscalculation to the district court. He asserts that the admission of error was an end-run around the agreement's terms. Jennings contends that the statement eliminated the parties' express agreement and, in essence, urged the district court to ignore it. The government counters that there was no breach, and it kept its end of the bargain by asking the court to accept the joint recommendation. Upon review, we conclude that the government did not breach the plea agreement. Moreover, even if there was a breach, we also conclude that any breach that may have occurred did not affect Jennings's substantial rights.

"When a guilty plea is induced by an agreement, the government must abide by its terms." *Lovelace*, 565 F.3d at 1087. This court requires "meticulous fidelity to the plea agreement." *United States v. Brown*, 5 F.4th 913, 916 (8th Cir. 2021). "Although a less than enthusiastic recommendation will not ordinarily constitute a breach, the government is obligated to make the recommendation to the court."

*United States v. Jeffries*, 569 F.3d 873, 876 (8th Cir. 2009). "If the government actively advocates for an outcome different from the one it had promised to seek, it breaches the plea agreement." *United States v. Beston*, 43 F.4th 867, 873 (8th Cir. 2022) (cleaned up). Even when the government technically adheres to the plea agreement, it could still breach the plea agreement when its conduct as a whole "violate[s] the spirit of the promise." *United States v. Mitchell*, 136 F.3d 1192, 1194 (8th Cir. 1998).

Here, the parties agreed to a joint recommendation for 40 months' imprisonment. At sentencing, the government first asked the court to accept the joint recommendation. When the court asked how it could recommend a downward variance given the bond violations, the government informed the court of its criminal history miscalculation. The court chose to focus on Jennings's bond violations rather than the Guidelines calculations. As directed by the court, the government defended its downward variance recommendation by suggesting that a variance could be appropriate because Jennings's bond violations were non-violent. The court interrupted the government's argument in favor of the downward variance to ask if the government was recommending 40 months' imprisonment, and the government reiterated its support for the joint recommendation. Jennings acknowledges that the government made the promised recommendation for 40 months' imprisonment. Nonetheless, Jennings argues that the government's conduct violated the spirit of the agreement by encouraging the court to reach a result at odds with the joint recommendation.

We conclude that the government did not breach the plea agreement. The agreement required the government to make a joint recommendation for a sentence of 40 months' imprisonment. It met that requirement twice. The government only mentioned its mistaken criminal history calculation in response to the court's skepticism toward the joint recommendation. This case has some similarity to *United States v. Zurheide*, 959 F.3d 919 (8th Cir. 2020). There, the police arrested Zurheide in a sting operation involving pre-arranged sexual contact with a minor. *Id.* at 921. The parties agreed to recommend 70 months' imprisonment, but the district court

imposed an 84-month sentence. *Id.* at 920. The district court determined the Guidelines range was 70 to 87 months and then expressed concern about the case's "particularly disturbing" facts. *Id.* at 921. The prosecutor acknowledged the court's factual observation but confirmed the government's request for a sentence within the Guidelines range, which was reflected by the 70-month recommendation. *Id.* On appeal, Zurheide argued that the prosecutor's acknowledgment of the court's factual observation effectively breached the agreement because she only "paid lip service" to the promise and failed to argue for the joint recommendation. *Id.* We found no plain error because the prosecutor made the agreed upon recommendation to the court. *Id.* The district court expressed concern about the recommendation before the prosecutor spoke, and our court concluded "[the prosecutor] was not obligated to zealously defend the joint recommendation in the face of the court's hostility." *Id.*; *see also Baker*, 674 F.3d at 1068 (finding no plain error when the government promised to recommend a sentence at the low end of the Guidelines range and made this recommendation at sentencing but acknowledged the bad facts behind the crime because the government did make the recommendation and was not required to do so enthusiastically).

As in *Zurheide*, the government fulfilled its plea-deal promise. The government admitted its miscalculation only after the court expressed skepticism toward the joint recommendation because of Jennings's numerous bond violations. But the government, nonetheless, continued to advocate for the parties' joint recommendation. *Zurheide* is, however, distinguishable because Jennings does not argue that the government breached by failing to argue in support of the joint recommendation but rather argues that it breached by informing the court of its mistake, which cast doubt on the sincerity of the joint recommendation. That distinction notwithstanding, *Zurheide* is still instructive because in both cases the government kept its promise, and its comments were in response to the court's suspicion and inquiry into the joint recommendation.

Jennings contends that we should follow the persuasive precedent of a sister circuit found in *United States v. Warren*, 8 F.4th 444 (6th Cir. 2021). There, the Sixth

Circuit found breach of the plea agreement based on the breadth of the government's promise and the prosecutor's suggestion that the government may have made a different recommendation if it had other information. *Id.* at 448–49. We are not persuaded to follow *Warren* here. We conclude that it was Jennings's numerous bond violations, not the government's comments about its mistaken criminal history calculation, that led the court to reject the joint recommendation. In any event, given the district court's expressed skepticism toward the joint recommendation before the government committed the alleged breach of the plea agreement, Jennings cannot show a reasonable probability that the district court would have imposed a more favorable sentence without the government's comments. On this record, we discern no reversible error.

### B. *Substantive Reasonableness of the Sentence*

Jennings also challenges the substantive reasonableness of his 54-month sentence. We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *Id.* (internal quotation marks omitted). Jennings argues that the district court committed a clear error of judgment in weighing the § 3553(a) factors by discounting his recent mental health diagnoses. Specifically, he argues that the district court erred when it said (1) he was a danger to others, (2) he was unable to conform to the requirements of the law, and (3) additional time in custody was necessary.

Jennings faced a Sentencing Guidelines range of 46 to 57 months' imprisonment, and the district court imposed a 54-month sentence. We may apply a presumption of reasonableness when the sentence is within the Guidelines range. *Gall v. United States*, 552 U.S. 38, 51 (2007). "[T]he courts of appeals' 'reasonableness' presumption, rather than having independent legal effect, simply recognizes the real-world circumstance that when the judge's discretionary decision

accords with the Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable." *Rita v. United States*, 551 U.S. 338, 350–51 (2007). The defendant has the "burden to rebut the presumption and to show that the sentence should have been lower." *United States v. Washington*, 893 F.3d 1076, 1080 (8th Cir. 2018) (quoting *United States v. Funke*, 846 F.3d 998, 1000 (8th Cir. 2017)).

The district court did not abuse its discretion in imposing a 54-month sentence. The district court adequately explained the sentence and the relevant § 3553(a) factors. It acknowledged Jennings's letters, community support, and his mental health and substance abuse problems. The court observed that Jennings was 16 at the time of his first offense but also noted that the offense was very serious. It emphasized his 75 conduct violations in prison and his 10 bond violations, which the court said was a continuing pattern of legal violations that demonstrated Jennings was not amenable to supervision. The court discussed the purposes of sentencing and emphasized the importance of promoting respect for the law to deter both Jennings and others. In the end, when considering all § 3553(a) factors, the court found the 54-month within-Guidelines sentence was appropriate to meet the statutory sentencing objectives.

Jennings has not met his burden of showing the district court committed a clear error of judgment in weighing the § 3553(a) factors. "A district court has wide latitude to assign weight to [the] factors, and the district court may give some factors less weight than a defendant prefers or more weight to other factors, but that alone does not justify reversal." *United States v. Brown*, 992 F.3d 665, 673–74 (8th Cir. 2021) (cleaned up). Jennings disagrees with how the district court applied and weighed these factors. This is not enough to demonstrate an abuse of discretion. *See United States v. Neri*, 73 F.4th 984, 989 (8th Cir. 2023). The district court did not impose a substantively unreasonable sentence.

### III. *Conclusion*

For the foregoing reasons, we affirm the 54-month sentence imposed by the district court.

_____