# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1945

_____

United States of America

*Plaintiff - Appellee*

v.

Clayton Fire Thunder

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Western

_____

Submitted: March 17, 2026
Filed: May 19, 2026

_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Clayton Fire Thunder was convicted of one count of involuntary manslaughter, in violation of 18 U.S.C. §§ 1112 and 1153 and two counts of making false statements to federal law enforcement, in violation of 18 U.S.C. § 1001(a)(2).

The district court[1] imposed a 96-month term of imprisonment.  Fire Thunder appeals, raising three issues.  First, he claims the district court erred in applying a three-level sentencing enhancement for substantial interference with the administration of justice under USSG § 2J1.2(b)(2).  Second, the court imposed a substantively unreasonable sentence when it applied a 50-month upward variance. Finally, Fire Thunder argues the evidence is insufficient to sustain the jury's verdict. We affirm.

## I.    BACKGROUND

During the early morning hours on September 15, 2022, Justin Bradford dropped off his girlfriend, Nyvelle Quick Bear, at the hospital with a gunshot wound, which proved to be fatal.  Bradford told law enforcement that a .22 caliber revolver accidentally discharged in his house and hit Quick Bear after ricocheting around his bedroom.  Law enforcement initially arrested Bradford in connection with Quick Bear's death.  An autopsy, however, revealed Quick Bear had been shot with a .45 caliber bullet, not a .22 caliber.  Bradford's personal investigator later identified a bullet hole on the outside of Bradford's house that had apparently entered the bedroom.  An examination of surveillance footage of Bradford's house showed a Chevy Equinox arriving at 12:48 a.m. and leaving after a few minutes.  The same car returned around 4:10 a.m. and left a couple of minutes after the passenger went to Bradford's front door.  Three minutes later, surveillance footage showed Bradford's car driving rapidly to the hospital.

Investigators were able to identify Marino Waters as the driver of the Equinox and Clayton Fire Thunder as the passenger.  At the time of the incident, Waters and Fire Thunder had been drinking heavily.  Waters stated that they were friends with Bradford and that they had traveled to Bradford's house in order to sell him a gun as part of a plan to raise money to buy more alcohol and some gasoline.  Waters told

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

law enforcement that Fire Thunder had the gun when he approached Bradford's front door. Fire Thunder denied having a gun in two separate interviews with law enforcement. Fire Thunder was indicted for involuntary manslaughter and two counts of making false statements to law enforcement for his denials of having a gun, and the case proceeded to a jury trial.

During the trial, Waters testified that he attempted to clear the gun before he gave it to Fire Thunder to sell to Bradford. After Fire Thunder went up to the house, Waters heard a gunshot and a woman screaming. According to Waters's testimony, Fire Thunder returned to the car and told Waters, "The gun went off." Fire Thunder's ex-girlfriend, Renee Janis, testified that Fire Thunder confessed to her that he had accidentally shot a woman, whom Janis later learned to be Quick Bear. The government also elicited testimony from two forensic examiners suggesting the .45 caliber bullet recovered from the autopsy was fired from outside the house and passed through the siding. The jury found Fire Thunder guilty on all three counts.

At sentencing, the district court determined the base offense level for Fire Thunder's involuntary manslaughter conviction was 18 and the base offense level for his convictions for making false statements was 14. The district court then applied a three-level specific offense characteristic enhancement to the base offense level for the false statement convictions because it found the false statements substantially interfered with the administration of justice under USSG § 2J1.2(b)(2). The three-level enhancement resulted in an adjusted offense level of 17 for those convictions. The court applied grouping to the guideline calculation, applying § 3D1.4. As required by § 3D1.4, the district court applied the greater offense level of 18 and then added two units—one unit for the involuntary manslaughter conviction and one unit for the two false statement convictions,[2] which were grouped together—to arrive at a combined adjusted offense level of 20. Based on an adjusted

---

[2]Even without the three-level enhancement, the false statement convictions still would have received one unit because their base offense level was only 4 levels below the involuntary manslaughter offense level. See USSG § 3D1.4(a) ("Count one additional Unit for each Group that is . . . from 1 to 4 levels less serious.").

offense level of 20 and a criminal history category of II, the district court calculated a Guideline range of 37 to 46 months' imprisonment. The district court varied upward 50 months for a total sentence of 96 months' imprisonment, imposing the statutory maximum of 96 months for the involuntary manslaughter conviction and the statutory maximum sentence of 60 months for the false statements convictions all to run concurrently.

## II. DISCUSSION

### A. USSG § 2J1.2(b)(2) Enhancement

Fire Thunder argues the district court committed procedural error in applying the three-level specific offense characteristic enhancement under § 2J1.2(b)(2) to increase the offense level for his false statement convictions from 14 to 17.

We need not determine the enhancement's applicability in this case because any error was harmless. See United States v. Sigillito, 759 F.3d 913, 940 (8th Cir. 2014) (noting harmless error review is permissible for procedural errors, such as miscalculation of a defendant's offense level). A procedural error in sentencing is harmless if it "did not substantially influence the outcome of the sentencing proceeding." United States v. Scherer, 114 F.4th 987, 992 (8th Cir. 2024) (quotation omitted). Because § 3D1.4 directs the district court to use only the greater offense level—here, the offense level of 18 for involuntary manslaughter—when calculating the combined offense level, the § 2J1.2(b)(2) enhancement—which applied only to the lesser offense level for his false statement convictions—did not contribute to establishing Fire Thunder's Guideline range. Put simply, Fire Thunder's Guideline range would have been the same even if the district court did not apply the § 2J1.2(b)(2) enhancement. Something Fire Thunder's sentencing counsel recognized when she noted that applying the enhancement "doesn't impact the Guidelines." Likewise, nothing suggests the district court relied on the enhancement when it varied upward. To the contrary, the district court listed several other factors in determining the statutory maximum sentence was necessary. See United States

-4-

v. McGrew, 846 F.3d 277, 281 (8th Cir. 2017) (noting that where the sentencing court "applies the maximum statutory penalty for an offense irrespective of the Guidelines and explains its reasoning for doing so, any possible sentencing range miscalculation is harmless."). We find the application of § 2J1.2(b)(2) did not substantially influence Fire Thunder's sentence.

## B.     Substantive Reasonableness

We review the substantive reasonableness of a sentence for an abuse of discretion. United States v. Seys, 27 F.4th 606, 611 (8th Cir. 2022). A district court abuses its discretion by "1) ignoring a relevant factor that should have received significant weight, 2) giving too much weight to an irrelevant or improper factor, or 3) committing a clear error of judgment even when weighing only appropriate factors." United States v. Mims, 122 F.4th 1021, 1034 (8th Cir. 2024). It is the "unusual case when we reverse a district court sentence—whether within, above, or below the applicable guidelines range—as substantively unreasonable." United States v. Aguirre, 170 F.4th 695, 701 (8th Cir. 2026) (quotation omitted).

Fire Thunder argues the district court gave too much weight to factors already considered in establishing the Guideline range, resulting in an excessive sentence for an accidental shooting. Although sentencing courts "must use caution when supporting a substantial upward variance with factors already reflected in the Guidelines," United States v. Dennis, 131 F.4th 913, 917 (8th Cir. 2025) (quotation omitted), factors used in calculating the Guideline range "can form the basis of an upward variance," United States v. Manuel, 73 F.4th 989, 993 (8th Cir. 2023). Here, the Guideline range failed to account for all of the factors the district court found relevant. The district court emphasized that Fire Thunder allowed Bradford to sit in custody for 13 months despite knowing Bradford did not shoot Quick Bear and "extend[ed] the anguish" felt by Quick Bear's family because they continued to blame the wrong person for her death. In that sense, the district court found the accidental shooting essentially became a "knowing crime." The district court further noted that even at sentencing, Fire Thunder "continued to deny responsibility."

Ultimately, the district court determined the statutory maximum sentence was necessary because Fire Thunder "took a woman's life, covered it up, hid [his] role, lied about [his] role, [and] accepted no responsibility at that time or now."

Fire Thunder also argues the district court ignored several mitigating factors, including his lack of history of violence, substance abuse, physical and mental health issues, and prior success under supervision. A sentencing court, however, "need not specifically respond to every argument made by the defendant, or mechanically recite each § 3553(a) factor." United States v. French, 719 F.3d 1002, 1007 (8th Cir. 2013) (quotation omitted). Here, the district court noted Fire Thunder's history of substance abuse and recommended he be allowed to participate in the Bureau of Prisons' Substance Abuse Treatment Program. The district court further heard argument from Fire Thunder and the government on the remaining mitigating factors but placed greater emphasis on the seriousness of the offense, the impact on Quick Bear's family, and Fire Thunder's failure to accept responsibility. United States v. Beyers, 854 F.3d 1041, 1043 (8th Cir. 2017) ("Where the district court heard argument about specific factors, we may presume that the court considered those factors even if the court did not address them expressly." (cleaned up)). We find no abuse of discretion in the district court's reliance on those aggravating factors to vary upward and impose the statutory maximum sentence.

## C.    Sufficiency of the Evidence

We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor. United States v. Martinez, 169 F.4th 783, 788 (8th Cir. 2026). Sufficient evidence supports a jury verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Mims, 122 F.4th at 1033 (8th Cir. 2024) (quotation omitted).

Fire Thunder argues the evidence was insufficient to support any of his convictions. Fire Thunder claims there is insufficient evidence to support a finding

that he had a gun while he was at Bradford's house.  In Fire Thunder's view, no rational jury could find that he discharged a gun unlawfully killing Quick Bear, in violation of 18 U.S.C. § 1112, or that he made "materially false" statements to law enforcement when he told them he did not have a gun at Bradford's house, in violation of 18 U.S.C. § 1001.  His argument is unavailing.

Overwhelming evidence supports a finding that Fire Thunder fired the bullet that killed Quick Bear.  A .45 caliber bullet, which was admitted into evidence, killed Quick Bear, but law enforcement did not find a .45 caliber gun in Bradford's house. Law enforcement then identified a hole, consistent with a .45 caliber bullet, that pierced through the siding of the house to the room where Quick Bear was shot.  A forensic scientist testified that the bullet had damage consistent with passing through a wall and had white and green paint residue on it.  Another forensic examiner similarly found white and green paint residue on the bullet.  Waters testified that Fire Thunder exited the car to sell Bradford a gun.  Shortly thereafter, Waters heard a gunshot and a woman screaming, and when Fire Thunder returned to the car, he told Waters the gun went off.  Although Fire Thunder challenges Waters's credibility, Waters's testimony is corroborated by surveillance footage showing Fire Thunder near the house at the time Quick Bear was shot and Janis's testimony that Fire Thunder confessed to accidentally shooting Bradford's girlfriend.  Given the corroborating evidence, we will not second guess the jury's credibility determination.  United States v. Ziesman, 409 F.3d 941, 948 (8th Cir. 2005) ("[I]t is well established that the issue of witness credibility is virtually unreviewable on appeal because it is preeminently the job of the finder of fact." (internal quotation marks omitted)).

Fire Thunder also argues there is insufficient evidence to support a finding that he acted with gross negligence.  See United States v. Bolman, 956 F.3d 583, 586 (8th Cir. 2020) (requiring proof that the defendant acted with a grossly negligent *mens rea* for involuntary manslaughter).  A defendant acts with gross negligence when he has "a wanton or reckless disregard for human life, knowing that his conduct was a threat to the lives of others or having knowledge of such

circumstances as could reasonably have enabled him to foresee the peril to which his act might subject others." Id. (quotation omitted). "Gross negligence is a far more serious level of culpability than that of ordinary tort negligence, but still short of the extreme recklessness, or malice required for murder." Id. (internal quotation marks omitted).

Sufficient evidence supports a finding that Fire Thunder acted with gross negligence. Waters testified that he and Fire Thunder had been drinking heavily throughout the evening and into the early morning. Waters himself drank about "half a gallon" of vodka and felt "affected by the alcohol." Yet, Fire Thunder relied on Waters to remove the magazine and clear the gun. Further, Fire Thunder had an injury to his dominant hand causing it to clench inward. And Fire Thunder indicated he knew the house was occupied. Despite his heavy drinking, hand injury, and knowledge that the house was occupied, Fire Thunder approached Bradford's house with a gun that had been ineffectively cleared and then mishandled it in a manner that caused it to fire into the house. Viewing that evidence in the light most favorable to the verdict and granting all inferences in the verdict's favor, a rational jury could find beyond a reasonable doubt that Fire Thunder knew or could have reasonably foreseen his conduct in approaching the house and mishandling the gun threatened the lives of the occupants of the house.

## III. CONCLUSION

We affirm the judgment of the district court.

_____